IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:17-cv-00101 |
| ) | |
| ) | |
| TRUMBULL METROPOLITAN HOUSING ) | |
| AUTHORITY (TMHA), RUSSELL OSMAN, IN ) | |
| HIS OFFICIAL CAPACITY AS ASSISTANT ) | **COMPLAINT** |
| DIRECTOR OF TMHA, AND VALERIE ) | |
| SIMEON IN HER OFFICIAL CAPACITY AS ) | |
| VOUCHER PROGRAM COORDINATOR FOR ) | |
| TMHA, ) | |
| ) | |
| Defendants, ) | |

**JURISDICTION AND VENUE**

1. This action is brought by the United States on behalf of aggrieved persons JG, SP, and their minor children AP and MH[1] (collectively "Complainants"), to enforce the provisions of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3631 ("FHA").

2. The FHA provides, *inter alia*, that it is unlawful to discriminate on the basis of disability or on the basis of association with a person with a disability in the sale or rental of housing, or to otherwise make housing unavailable because of disability or association with a person with a disability. 42 U.S.C. §§ 3604(f)(l), 3604(f)(2). The FHA also

---

[1] The aggrieved persons are referred to by their initials to protect their privacy, as this matter involves sensitive medical information. Additionally, two of the aggrieved persons are minor children.

renders it unlawful to refuse to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford persons with disabilities the equal opportunity to use and enjoy housing. 42 U.S.C. §§ 3604(f)(3)(B).

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 3612(o).

4. Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b) and 42 U.S.C. § 3612(o), in that the events or omissions giving rise to this action occurred in this district and because the Defendants reside in this district.

## BACKGROUND AND FACTS

5. At all times relevant to the complaint, Defendant Trumbull Metropolitan Housing Authority ("TMHA") was a public housing authority that receives federal financial assistance through an Annual Contributions Contract with the Department of Housing and Urban Development (HUD). TMHA uses this funding, in part, to finance a housing voucher program.

6. At all times relevant to the complaint, Defendant Russell Osman was the Assistant Director of TMHA, and Valerie Simeon was TMHA's Voucher Program Coordinator. In these capacities, Defendants Osman and Simeon were responsible for the administration of TMHA's housing voucher program.

7. JG, SP and their minor children, AP and MH, were residents of Trumbull County, who sought to participate in the housing voucher program administered through TMHA. JG, who has type-1 diabetes and end-stage renal disease, and one of the minor children, who has learning disabilities and chronic enuresis, are persons with a disability as defined by the FHA. 42 U.S.C. § 3602(h)(l) l; 24 C.F.R. §§ 100.20, 100.201. SP and the other

minor child are persons associated with persons with a disability for purposes of the FHA. See 42 U.S.C. § 3604 (f)(1)(C) & (f)(2)(C).

8. Complainants JG, SP, and their minor children AP and MH are aggrieved persons under the FHA. 42 U.S.C. § 3602(i); 24 C.F.R. § 100.20.

9. In February 2014, SP submitted an application to participate in TMHA's housing voucher program, as the head of household. At that time, SP was the single parent of two grade-school-aged children, AP and MH. TMHA reviewed her application and placed her on the voucher program waiting list.

10. In April 2014, JG and SP were married. In June 2014 SP notified TMHA of the marriage and requested that TMHA add JG to her pending application as head of household. She also informed TMHA that JG received Supplemental Security Income benefits, and that he would begin receiving Social Security Disability Insurance in October 2014. She explained that JG, who suffers from type-1 diabetes and end-stage renal disease, was awaiting kidney and pancreas transplants, and was undergoing dialysis three times per week.

11. On or about August 20, 2014, TMHA notified JG and SP that they had reached the top of the waiting list, and on or about September 3, 2014, TMHA issued them a voucher for a two-bedroom home, based on a household of two adults and two children.

12. Around the same time, JG was approved to begin preparing to perform home peritoneal dialysis treatments on himself. Home dialysis requires a separate space in the home, to maintain the most sanitary conditions, as well as to store a large volume of dialysis equipment and supplies.

13. Additionally, one of SP's children has learning disabilities and enuresis (chronic bed wetting); because of these disabilities, this child requires a quiet space for schoolwork, and disrupts the sleep of the other child if they are sharing a bedroom.

14. Given these needs for additional space, SP requested as a reasonable accommodation that TMHA increase their voucher from two bedrooms to four bedrooms. On or about September 5, 2014, she provided TMHA with Verification of Need forms signed by a licensed social worker at JG's dialysis center, and by the physician of the minor child with disabilities.

15. After it received these Verifications of Need forms, on or about September 5, 2014, TMHA issued JG and SP an amended voucher for a four-bedroom home.

16. On or about September 17, 2014, JG and SP informed TMHA that they had found a house to rent, on Merriwether Street in Warren. The Merriwether house was a three-bedroom home, but it had an additional room on the lower level, which JG and SP planned to use for JG's home dialysis. This room has no door and is partially below grade.

17. As part of the voucher program process, TMHA inspected the Merriwether house to determine whether it was eligible for rental assistance. Federal guidelines require that properties must meet basic health and safety requirements, such as adequate heat, water supply, illumination, and food preparation facilities. The inspection is not designed to evaluate whether a property is suitable for a potential resident's particularized needs, such as home dialysis. TMHA's inspection report described the house as having three "sleeping rooms," all on the "2nd floor level," and a "den" on the "B floor level."

TMHA determined on or about September 29, 2014 that the Merriwether house had passed inspection.

18. At some point between September 17 and September 29, 2014, JG and SP described the Merriwether house to a social worker from JG's dialysis center, who was helping him prepare to begin home dialysis. When she learned that the room where JG planned to do his treatments was in a basement, had no door, and was on a travel route from the garage to the main house, the social worker told JG and SP that the room was not suitable for dialysis. Her reasons included difficulty keeping the room clean and sanitary, given its basement location and the fact that other family members would be passing through it frequently. She also had concerns about the appropriateness of the sub-grade room for storing dialysis equipment and supplies.

19. On September 30, 2014, JG and SP delivered to TMHA a letter from the social worker, outlining her concerns about the Merriwether house, and stating that it would be beneficial for him to live in a home with a room devoted exclusively for his dialysis.

20. On October 1, 2014, Defendants Osman and Simeon exchanged emails about the issues raised in the social worker's letter, in which Simeon noted that TMHA policies provided that "once the unit has had an initial inspection the family must take this unit unless the landlord fails to correct" any problems discovered during the inspection. Simeon acknowledged, "I don't know anything about home dialysis and what all it entails;" nonetheless, despite the social worker's letter stating that the Merriwether home was not suitable, Simeon wondered why JG couldn't make the house work for his needs and told Osman that allowing the family to seek another home "would be your call."

21. During an investigation of this matter by HUD, Osman and Simeon acknowledged that they ultimately made the decision not to waive the TMHA policy requiring applicants to move into a home once it has been inspected, and that they recommended terminating JG and SP's voucher assistance for their failure to comply with this policy. They also acknowledged that the policy could have been waived and that TMHA had made exceptions to this policy in the past.

22. On or about October 2, 2014, JG wrote a letter to Defendant Osman repeating his need for a separate bedroom for dialysis. He also informed TMHA that he and SP had found another house with four bedrooms which they wanted to rent with their four-bedroom voucher.

23. On October 6, 2014, TMHA sent JG and SP a letter stating that their voucher assistance had been terminated as of October 3, 2014 because they had "failed to sign documents and move into [a] unit that had passed inspection." In violation of TMHA's Administrative Plan, this letter did not contain a statement explaining the family's right to appeal the termination.

24. On October 8, 2014, JG and SP wrote to Defendant Simeon, asking her to reconsider the termination of their voucher and stating that the four-bedroom home they had found was still available. They also attached a letter dated October 8, 2014 from JG's nephrologist, stating that "to perform peritoneal dialysis safely, it is our recommendation that [the] patient have a clean room in his house designated solely for that purpose."

25. TMHA refused to reconsider its termination of JG and SP's voucher.

26. Without voucher assistance, JG and SP were unable to afford to rent a suitable home. As a result, JG was forced to move to his father's home and SP was forced to move to her

grandmother's home with the minor children, approximately 20 miles from JG's father's house.

27. The distance between JG and SP meant she often was not able to assist him with his dialysis and other medical needs, and his health declined dramatically. In the eleven months they were living apart, JG was hospitalized on at least four occasions and twice contracted dialysis-related infections, which ultimately required that he return to in-clinic dialysis on August 25, 2015.

28. The inability to live together also took a heavy emotional toll on JG and SP and the children and caused strain to their marriage and life as a family.

29. On or about February 20, 2015, JG and SP filed a complaint of discrimination with HUD, which they amended twice, on November 30, 2015 and July 25, 2016. They alleged that by denying their request for a reasonable accommodation to TMHA's policy requiring them to rent the Merriwether house once it had been inspected, the Defendants had violated sections 804(f)(l), 804(f)(2), and 804(f)(3)(B) of the FHA.

30. Pursuant to 42 U.S.C. § § 3610(a) and (b), the Secretary of HUD conducted an investigation of JG and SP's complaint, attempted conciliation without success, and prepared a final investigative report. Based on the information gathered in this investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendants had committed discriminatory housing practices. Therefore, on September 22, and September 23, 2016, respectively, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging that the Defendants had engaged in discriminatory practices, in violation of the Fair Housing Act.

31. On or about October 17, 2016, JG and SP timely elected to have the charge resolved in a federal civil action, pursuant to 42 U.S.C. § 3612(a). The Secretary subsequently authorized the Attorney General to file this action on behalf of JG, SP and the minor children, pursuant to 42 U.S.C. § 3612(o).

## CAUSE OF ACTION – VIOLATION OF FAIR HOUSING ACT

32. Plaintiff, United States of America, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31, above.

33. By the actions and statements set forth above, Defendants have:

   a. discriminated in the rental of, or otherwise made unavailable or denied a dwelling because of disability, in violation of Section 804(f)(1) of the FHA, 42 U.S.C. § 3604(f)(1);

   b. discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of Section 804(f)(2) of the FHA, 42 U.S.C. § 3604(f)(2); and

   c. refused to make reasonable accommodations in rules, practices, or policies, when such accommodations may be necessary to afford persons with disabilities the equal opportunity to use and enjoy housing, in violation of Section 804(f)(3) of the FHA, 42 U.S.C. § 3604(f)(3).

34. As a result of the conduct or actions of the Defendants, JG, SP, and the minor children AP and MH have suffered damages and are aggrieved persons within the meaning of 42 U.S.C. § 3602(i).

35. The Defendants' discriminatory actions and statements as set forth above were intentional, willful, and taken in disregard for the rights of JG, SP, and the minor children AP and MH.

## REQUEST FOR RELIEF

WHEREFORE, the United States requests relief as follows:

    A. A declaration that the defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 et seq.;

    B. An order enjoining defendants, their agents, employees and successors, and all other persons in active concert or participation with them, from:

        (1) Discriminating against any person in any aspect of the rental of a dwelling, or otherwise making unavailable or denying a dwelling, because of disability;

        (2) Discriminating against any person in the terms, conditions, or privileges, of rental of dwellings, or in the provisions of services or facilities in connection with such dwellings, because of disability;

        (3) Failing to make reasonable accommodations in rules, practices, or policies, when such accommodations may be necessary to afford persons with disabilities the equal opportunity to use and enjoy housing;

    C. An order requiring defendants to take all necessary and appropriate affirmative steps to correct the continuing effects of its past and present discriminatory practices;

    D. An order requiring such action by the defendants as may be necessary to restore the Complainants to the position they would have occupied but for such discriminatory conduct;

    E. An award of monetary damages to the Complainants, pursuant to 42 U.S.C. §§ 3612((o)(3) and 3613(c)(1).

The United States further prays for such additional relief as the interests of justice may require.

Respectfully submitted,

CAROLE S. RENDON
United States Attorney

s/Michelle L. Heyer
Michelle L. Heyer (#0065723)
Heather Tonsing Volosin (#0069606)
Assistant United States Attorneys
United States Attorney's Office
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3686
(216) 522-2404 Fax
michelle.heyer@usdoj.gov
heather.tonsing.volosin@usdoj.gov