IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | 4:17-cv-00101 |
| JG, SP, and their minor children, AP and MH, | ) | |
| | ) | |
| Plaintiffs-Intervenors, | ) | |
| | ) | |
| vs. | ) | **INTERVENING COMPLAINT** |
| | ) | |
| TRUMBULL METROPOLITAN HOUSING AUTHORITY (TMHA), RUSSELL OSMAN, individually and in his official capacity as Assistant Director of TMHA, VALERIE SIMEON, individually and in her official capacity as Voucher Program Coordinator for TMHA, and DELBENE LAPOLLA & THOMAS, a partnership, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

Plaintiffs-Intervenors JG, SP, and  their minor children, AP and MH, for their Intervening

Complaint, allege:

## NATURE AND OVERVIEW OF THE ACTION

1.    The United States has brought a single cause of action on behalf of JG, SP, and their

minor children as aggrieved persons to enforce rights and provisions of Title VIII of the Civil Rights

Act of 1968  ("Fair Housing Act" or "FHA"), as amended, 42 U.S.C. § 3601, *et seq.*, against

Defendants.

2.    The United States alleges that Defendants Trumbull Metropolitan Housing Authority

("TMHA"), Russell Osman, in his official capacity as Assistant Director of TMHA ("Osman"), and

Valerie Simeon, in her official capacity as Voucher Program Coordinator for TMHA ("Simeon"), violated Sections 804(f)(1) and 804(f)(2) of the FHA by engaging in unlawful discrimination on the basis of disability or on the basis of association with a person with disability in the sale or rental of housing, or to otherwise make housing unavailable because of disability or association with a person with disability, 42 U.S.C. §§ 3604(f)(1), 3604(f)(2); and violated Section 804(f)(3)(B) of the FHA by refusing to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford persons with disabilities the equal opportunity to use and enjoy housing, 42 U.S.C. § 3604(f)(3).

3.      This not a typical housing discrimination case. TMHA, Osman and Simeons's misconduct extends well beyond the limited allegations in the United States's complaint (ECF no. 1). These Defendants as shown below deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment of the United States.

4.      Defendants responded to Plaintiffs-Intervenors' housing discrimination complaint filed with the United States Department of Housing and Urban Development (HUD), as alleged below, with a coordinated campaign of intimidation, threats, retaliation, and racketeering in violation of Section 818 of the FHA, and a pattern of fraud and racketeering in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*

5.      Defendants' misconduct flows from the misuse of a HUD-9886 Form to circumvent JG's privacy rights and obtain his confidential medical information to justify Defendants' discrimination and refusal to provide reasonable accommodation due to disability. TMHA and Simeon took the signature page from a form used to obtain income information – HUD-9886 Form – signed by JG and SP, attached it to another form, a Verification of Need Form, which Simeon

prepared for JG's signature and addressed to his medical care facility, to make it appear as though JG had signed the Verification of Need Form, and then, without JG's knowledge or consent, mailed and used it to obtain unauthorized access to his medical information from JG's medical care providers in violation of Section 804(f)(2) of the FHA. 42 U.S.C. § 3604(f)(2); 24 C.F.R. §§ 100.202(b) and 100.204.

6.    Defendants' deception and misuse of the HUD-9886 Form here is not an isolated incident of misconduct. Defendants TMHA, Osman and Simeon admitted during the HUD investigation that TMHA's staff uses Housing Choice Voucher Program participants' signature pages from the HUD-9886 Form for Verification of Need  Forms, as in this case, for verification of need in connection with reasonable accommodation requests. This practice at TMHA of obtaining unauthorized medical information when verifying reasonable accommodation requests is targeted solely at disabled program participants, misuses the authorization of consent provided in the HUD-9886 form, and circumvents the privacy rights of disabled program participants.

7.    JG and SP and their minor children are black and Defendants Osman and Simeon are white, and Defendants' housing discrimination and failure to make reasonable accommodations in violation of the FHA was racially motivated in violation of the FHA, 42 U.S.C. § 3604(b).  Finally, Defendants as alleged below have engaged in intentional infliction of emotion distress.

## JURISDICTION AND VENUE

8.    JG, SP, and their minor children are intervening to protect their interests as aggrieved persons in the action brought by the United States to enforce provisions of the Fair Housing Act and Racketeering Influenced Corrupt Organizations Act.

9.    This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1345, and 1367; and 42 U.S.C. § 3612(o)(1).

10.    The state claim alleged is so related to claims in the action that they form part of the same case or controversy giving this Court supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367(a).

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 3612(o)(1) because all or a substantial part of the events giving rights to the claims in this action took place in the Northern District of Ohio.

## PARTIES

12.    JG, SP, and their minor children, AP and MH, are and, all times relevant to the Intervening Complaint, were residents of Trumbull County, Ohio who sought to participate in Defendant TMHA's housing voucher program.

13.    JG, who has type-1 diabetes and end-stage renal disease, and one of the minor children, who has learning disabilities and chronic enuresis, are persons with a disability as defined by the FHA, 42 U.S.C. § 3602(h)(1) (The Act uses the term "handicap" instead of the term "disability," but both terms have the same meaning. The Intervening Complaint uses the term "disability," which is more generally accepted.); 24 C.F.R. §§ 100.20, 100.201.

14.    SP and the other minor child are persons associated with persons with a disability for purposes of the FHA. *See* 42 U.S.C. §§ 3604(f)(1)(C) & (f)(2)(C).

15.    JG was first diagnosed with type 1 diabetes—an autoimmune disease which affects the operation of the pancreas – at a young age. He was also diagnosed with end-stage renal disease and placed on hemodialysis and later, home peritoneal dialysis treatments, substantially limiting his major life activities related to kidney function, including the ability to remove toxins from the blood and limiting his ability to urinate, ambulate, fight infections and work. JG is currently waiting for both kidney and pancreas transplants.

16.     Plaintiffs-Intervenors are aggrieved persons under the FHA, 42 U.S.C. § 3602(i); 24 C.F.R. § 100.20.

17.     Defendant TMHA is and, at all times relevant to the Intervening Complaint, was a body corporate and politic, created and existing under the Metropolitan Housing Authority Act, Ohio Revised Code Chapter 3735, and a public housing authority in Trumbull County, Ohio that receives federal financial assistance through an Annual Contributions Contract with HUD. TMHA uses this funding, in part, to finance and administer a housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1473(f).

18.     Defendants Osman and Simeon are individuals and, at all times relevant to the Intervening Complaint, were TMHA's Assistant Director and Voucher Program Coordinator, respectively. In these capacities, Osman and Simeon were responsible for the administration of the housing voucher program administered by TMHA in a manner that is consistent with federal and state laws and regulations.

19.     Defendant Delbene LaPolla & Thomas is an Ohio partnership and law firm with its offices in Warren, Ohio. Delbene LaPolla & Thomas is, and for several years has been, the law firm representing TMHA in personnel and other matters, and the law firm represented TMHA, Osman and Simeon in connection with Plaintiffs-Intervenors' housing discrimination complaint filed with HUD.

## PROCEDURAL HISTORY

20.     December 21, 2014, JG and SP submitted a housing discrimination complaint online to HUD against TMHA and Simeon. The complaint was amended in July 2016 to add JG and SP's minor children as aggrieved parties and Defendant Osman as a respondent.

21. Pursuant to 42 U.S.C. § § 3610(a) and (b), the Secretary of HUD conducted an investigation of JG and SP's complaint, attempted conciliation without success, and prepared a final investigative report.

22. Based on the information gathered in this investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendants had committed discriminatory housing practices. Therefore, on September 22, and September 23, 2016, respectively, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging that Defendants had engaged in discriminatory practices, in violation of the Fair Housing Act.

23. On or about October 17, 2016, Plaintiffs-Intervenors formally elected to have the charge heard in federal court, and on January 13, 2017, the Attorney General filed a civil action on their behalf that identifies them as "JG, SP, and their minor children AP and MH" in order to protect their privacy, as this matter involves sensitive medical information. (ECF no. 1 at 1, fn.1).

24. As aggrieved persons who have elected that the Attorney General commence and maintain a civil action, JG, SP, and their minor children are entitled to intervene in this action as a matter of right.

## GENERAL ALLEGATIONS

### JG and SP Apply for Housing Voucher

25. In February 2014, SP submitted an application as the head of the household to participate in TMHA's housing voucher program and Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1473(f). At that time, SP was the single parent of two grade-school-aged children, AP and MH. TMHA reviewed her application and placed her on the voucher program waiting list.

26.     The Section 8 Housing Choice Voucher Program is a federal program wherein HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing. This program is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. §1437f(b)(1) and 24 C.F.R. §982.1.

27.     Under the Section 8 Housing Choice Voucher Program,

a.      Families select and rent units that meet program housing quality standards, 24 C.F.R. § 982.1 (a)(2);

b.      The Public Housing Authority ("PHA") then reviews the decision and makes a decision to approve a family's unit and tenancy; and

c.      Once the tenancy has been approved, the PHA contracts with the owner to make rent subsidy payments on behalf of the family. *Id*.

28.     If the PHA wishes to terminate assistance on behalf of a participating family, it must give the family the opportunity for an informal hearing before termination of housing assistance. 24 C.F.R. §982.555 (a)(v). A notice to terminate assistance must contain a brief statement of the reasons for the decision and notification of the party's right to an informal hearing. 42 U.S.C. §1437d(k), 24 C.F.R. §982.555 (c)(2)(i) and (ii).

29.     The PHA and the family *must* be given the opportunity to present evidence, and may question any witnesses. 42 U.S.C. §1437d(k), 24 C.F.R. §982.555(e)(5) (emphasis added).

30.     The PHA is required to adopt written procedures for conducting informal hearings. 42 U.S.C. §1437d(k), 24 C.F.R. §982.555 (e)(6). The person who conducts the hearing *shall* issue a written decision stating briefly the reasons for the decision. Factual determinations *must* be based on a preponderance of the evidence presented at the hearing. *Id*. (emphasis added).

31.      In April 2014, JG and SP were married. SP notified TMHA in June 2014 of the marriage and requested that TMHA add JG to her pending application as head of household. She also informed TMHA that JG received Supplemental Security Income ("SSI") benefits, and that he would begin receiving Social Security Disability Insurance ("SSDI") in October 2014. She explained that JG, who suffers from type-1 diabetes and end-stage renal disease, was awaiting kidney and pancreas transplants, and was undergoing dialysis three times per week.

32.      Receipt of either SSI or SSDI income is sufficient verification that an individual qualifies as a person with disability.

33.      Defendants are, and were since April 2014, aware that JG is a person with a disability as defined by the FHA, 42 U.S.C. § 3602(h)(1).

34.       On or about August 20, 2014, TMHA notified JG and SP that they had reached the top of the waiting list, and on or about September 3, 2014, TMHA accepted JG and SP as participants in the Housing Choice Voucher Program and issued them a Section 8 voucher for a two-bedroom home, based on a household of two adults and two children.

35.      JG and SP's participation in the § 8 Housing Choice Voucher Program administered by Defendants is a property interest protected by the requirement of procedural due process.

36.      Around the same time, JG was approved to begin preparing to perform home peritoneal dialysis treatments on himself. Home dialysis requires a separate space in the home, to maintain the most sanitary conditions, as well as to store a large volume of dialysis equipment and supplies.

37.      Additionally, one of SP's children has learning disabilities and enuresis, and because of these disabilities, this child requires a quiet space for schoolwork, and disrupts the sleep of the other child if they are sharing a bedroom.

**TMHA Issues Voucher to J.G. and S.P. for Four Bedroom House**

38.     Given the needs for additional space due to JG's and one of her children's disabilities, SP requested as a reasonable accommodation that TMHA increase their Section 8 voucher from two bedrooms to four bedrooms. On or about September 5, 2014, she provided TMHA with Verification of Need forms signed by a licensed social worker at JG's dialysis center, and by the physician of the minor child with disabilities.

39.     Defendants are, and were since September 2014, aware that one of SP's minor children is a person with a disability as defined by the FHA, 42 U.S.C. § 3602(h)(1).

40.     Defendants are, and were since September 2014, aware that SP and the other minor child are persons associated with persons with a disability for purposes of the FHA, 42 U.S.C. §§ 3604(f)(1)(C) & (f)(2)(C).

41.     After TMHA received these Verifications of Need forms on or about September 5, 2014, it made reasonable accommodation and issued JG and SP an amended voucher for a four-bedroom home.

42.     During the HUD investigation, Simeon acknowledged that she received the two completed, signed Verification of Need Forms from SP.  When questioned about the reason for the voucher increase, Simeon told the HUD investigator that SP submitted the two Forms for JG and their child which substantiated their need for separate bedrooms, and as a result, Simeon approved the request.

43.     The HUD investigation did not turn up an evidence suggesting that, in September 2014, Defendants questioned either JG's or the child's September 2014 Verification of Need Forms before approving Plaintiffs-Intervenor's reasonable accommodation request for a four-bedroom

voucher. Likewise, the HUD investigation did not turn up any evidence that Defendants required or requested additional medical information prior to granting that reasonable accommodation request.

### JG and SP Select Three-Bedroom Merriweather House

44.    On or about September 17, 2014, JG and SP informed TMHA that they had found a house to rent, on Merriweather Street in Warren. The Merriweather house was a three-bedroom home, but it had an additional room on the lower level or basement, which JG and SP planned to use for JG's home dialysis. The basement space could not be closed off from the rest of the common family areas, had no door, and is partially below grade. This lower level is connected to the drive-under garage where home's laundry appliances were located.

45.    As part of the voucher program process, TMHA inspected the Merriweather house to determine whether it was eligible for rental assistance.

46.    As part of the voucher program process, TMHA inspected the Merriweather house to determine whether it was eligible for rental assistance. , Respondent TMHA's 2014 Administrative Plan, Chapter 10(B), addresses HQS Inspections and related policies. The policy, in pertinent part, states: "Once the unit has had an initial inspection the family must take this unit unless the landlord fails to correct the items noted on the inspection list."

47.    Federal guidelines require that properties must meet basic health and safety requirements, such as adequate heat, water supply, illumination, and food preparation facilities. The inspection is not designed to evaluate whether a property is suitable for a potential resident's particularized needs, such as home dialysis.  TMHA's inspection report described the Merriweather house as having three "sleeping rooms," all on the "2nd floor level," and a "den" on the "B floor level."  The daughter of the owner of the Merriweather home disputed this characterization and insisted that the space was not a "den", but rather "the basement."

48.     On September 29, 2014, TMHA conducted and passed an inspection of the Merriweather home.

### JG and SP Learn Merriweather House is Not Suitable and Seek Approval of Four-Bedroom Atlantic House

49.     Although the Merriweather home was a three-bedroom, rather than a four-bedroom home, JG and SP planned to use the below-grade living space in the basement for JG's dialysis treatments. However, sometime before September 29, 2014, they described the configuration of the Merriweather home to a licensed "master's level" social worker employed by JG's dialysis center. The social worker's job includes counseling patients on compliance issues with treatments, such as taking medication and issues concerning the cleanliness of a patient's home. She told JG and SP that the below-grade space at the Merriweather home was not appropriate for JG's disability–related needs.

50.     According to the dialysis center's website, and, on information and belief, medical industry standards, to perform peritoneal dialysis at home, a patient requires a clean and well-lit room or other area that can be closed off. The dialysis center also recommends that a patient have enough dry space to store a month's worth of supplies. In JG's case, one month's supplies consisted of approximately 40 boxes of various dialysis implements. According to the Home Visit Checklists used by the dialysis center's Home Training Nurse, the treatment site is evaluated for the type of dwelling, the community environment, proximity to hospital and a bathroom, sewage system, water supply, cleanliness, appropriate electrical, heating and cooling systems, adequate lighting and space for storage, an appropriate work surface, inaccessibility to children and pets, and closeable doors.

51.     The below– grade space in the Merriweather home lacked closeable door to separate the space from common areas of the home and JG and SP's children. Additionally, the home's

laundry appliances were located in the garage· which would likely increase foot traffic through the basement space. These conditions threatened the cleanliness of the space.

52.    Shortly after JG and SP learned from the social worker that the basement level area of the Merriweather home was not a suitable space to perform at-home dialysis treatment, JG and SP located alternate housing – a four-bedroom home-located on Atlantic Street in Warren that was suitable for both JG's and the minor child's disability-related needs.

53.    On or about September 29, 2014, JG and SP notified TMHA via a hand-delivered letter, dated September 29, 2014, that the basement in the Merriweather home was not a suitable area for JG's at-home dialysis treatments. The letter outlined concerns about the Merriweather house, and stated that it would be beneficial for JG to live in a home with a room devoted exclusively for his dialysis.

54.    In the letter dated September 29, 2014, SP requested, as a reasonable accommodation, the issuance of new paperwork to rent a different home that SP and JG had located on Atlantic Street in Warren, a four-bedroom home that would be more suitable for their disability-related needs. SP stated that the first floor bedroom at the Atlantic home was ideal for JG's treatment as it was separate from the other bedrooms, it was a private space with a door, it included a closet for his medical equipment, it was adjacent to a bathroom and it included a ceiling fan.

55.    When SP delivered her reasonable accommodation request letter to TMHA on September 29, 2014, she spoke with Defendant Simeon, who admitted during the HUD investigation that she informed SP to sign the paperwork for the Merriweather home, live there for one year, and then find another place.

56.     The following day, on September 30, 2014, SP sent two electronic mail messages to Respondent Osman. In her emails, SP again requested new paperwork and explained that JG and SP were new to home dialysis treatment and had learned that the Merriweather basement was not suitable for JG's at–home treatments.  SP also "stated that her elder daughter had learning disabilities aud a kidney problem, both of which disrupt the sleep of the younger daughter. SP concluded both emails with a request for new paperwork to secure the Atlantic house.

57.     On September 30, 2014, JG and SP also visited TMHA and hand–delivered a letter, addressed to TMHA, from the social worker at JG's dialysis center. This letter includes the following language: "Mr. [Doe] will be starting Peritoneal Dialyses soon. Mr. [Doe] has been on dialysis since April 2014 and is in End Stage Renal Disease. For Mr. [Doe] to do this, it is important for him to have a room dedicated to doing his dialysis and storing his supplies. The house that Mrs. [Doe] spoke of, where he would be in the basement off of the garage is not a good situation for him to be in. He needs a place that is clean and separate from a common area for the family. It could be difficult to move the machine and the supplies in and out of the basement. A house were Mr. [Doe] would have a room devoted to his performing dialysis and store supplies would be most beneficial for our patient. If you have any questions, please feel free to call me[.]"

58.     Despite receipt of SP's September 30, 2014 emails and the social worker's letter, Defendants again informed JG and SP that TMHA's policy requires a family to lease a selected rental unit once the unit passes an inspection.

59.     Notwithstanding TMHA's policy requiring a family to lease a selected rental unit once the unit passes an inspection, Defendants admitted during the HUD investigation that the

aforementioned policy could be waived, as it is not a HUD requirement and also confirmed that exceptions have been made, in the past, to this policy. Defendants, for example, stated that a landlord may change his or her mind and withdraw from the transaction, or an inspection can occur at the wrong address. In those cases, where the presence of a disability is not a factor, Defendants reissue new paperwork to voucher holders in order to obtain alternative housing.

60.     Defendants did not assert that waiving policy requiring a family to lease a selected rental unit once the unit passes an inspection in Plaintiffs-Intervenors' case. Similarly, Defendants did not make this assertion in eighteen other cases discovered during the HUD investigation. Defendants also did not assert that waiving the policy for Plaintiffs-Intervenors would result in or constitute an undue financial or administrative burden.

61.     JG and SP rejected the Merriweather home for disability-related reasons after consulting with JG's medical care providers, not because they changed their mind for some other reason.

62.     On October 1, 2014, Defendants Osman and Simeon exchanged emails about the issues raised in the social worker's letter, in which Simeon noted that TMHA policies provided that "once the unit has had an initial inspection the family must take this unit unless the landlord fails to correct" any problems discovered during the inspection. Simeon acknowledged, "I don't know anything about home dialysis and what all it entails;" nonetheless, despite the social worker's letter stating that the Merriweather home was not suitable, Simeon wondered why JG couldn't make the house work for his needs and told Osman that allowing the family to seek another home "would be your call."

63.     In the email exchange between Simeon and Osman on October l, 2014, there is no mention that the social worker's September 30, 2014 letter – recommending a private and clean space for JG – was not acceptable because she was a social worker, and not a physician.

**TMHA, Osman and Simeon Refuse to Make Reasonable Accommodations or Approve
Atlantic House**

64.     During an investigation of this matter by HUD, Osman and Simeon acknowledged
that they ultimately made the decision not to waive the TMHA policy requiring applicants to move
into a home once it has been inspected, and that they recommended terminating JG and SP's voucher
assistance for their failure to comply with this policy. They also acknowledged that the policy could
have been waived and that TMHA had made exceptions to this policy in the past.

65.     On or about October 2, 2014, JG wrote a letter to Defendant Osman repeating his
need for a separate bedroom for dialysis. He also informed TMHA that he and SP had found another
house with four bedrooms which they wanted to rent with their four-bedroom voucher.

66.     Some of JG and SP's extended family members also unsuccessfully lobbied
Defendants in support of JG and SP's reasonable accommodation request.

67.     On October 3, 2014, Osman and TMHA terminated Plaintiffs-Intervenors' voucher
assistance, and on October 6, 2014, TMHA sent JG and SP a letter stating that their voucher
assistance had been terminated as of October 3, 2014 because they had "failed to sign documents and
move into [a] unit that had passed inspection."

68.     Defendants, upon information and belief, did not conduct any hearing prior to or in
connection with the decision to terminate Plaintiffs-Intervenors' voucher assistance.

69.      TMHA's letter of October 6, 2014 was intentionally false and materially misleading
because in violation of TMHA's policy in its Administrative Plan, the letter did not contain a
statement explaining to JG and SP their family's right to appeal the termination and it failed to
include instructions regarding Plaintiffs-Intervenors' right to request an informal review of the
decision terminating their voucher assistance as is required by both HUD regulations and
Respondent TMHA policy.

70.    TMHA's October 6, 2014 letter to JG and SP merely advised them that they may reapply for the voucher program when the waiting list reopens. At the time of the effective date of the termination, JG and SP's voucher for a four bedroom house had thirty days remaining until its expiration.

71.    On October 8, 2014, JG and SP wrote to Defendant Simeon, asking her to reconsider the termination of their voucher and stating that the four-bedroom home they had found was still available. They also attached a letter dated October 8, 2014 from JG's nephrologist, stating that "to perform peritoneal dialysis safely, it is our recommendation that [the] patient have a clean room in his house designated solely for that purpose."

72.    TMHA refused to reconsider its termination of JG and SP's voucher for a four bedroom house.

73.    As a result of the termination of their voucher assistance, JG, SP and their children were forced to split up and live separately. JG had to go reside with his father in Youngstown and SP and the minor children were forced to live twenty miles away with SP's grandmother in Warren.

74.    The distance between JG and SP meant she often was not able to assist him with his dialysis and other medical needs, and his health declined dramatically. When JG began his at-home dialysis treatment at his father's home it was oftentimes without the assistance of his wife, SP.

75.    SP and her children shared a small bedroom and had to alternate sleeping on the floor at night. The bedroom had no door and provided virtually no space for belongings. An uncle also resided at the grandmother's house during this time, and he suffered from mental issues for which he sometimes took medication and sometimes not. The uncle would frequently keep SP and her children awake during the night with loud cursing and making threats against SP. Fearing for her

children's safety, SP on many occasions would find rides to a friend's houses, often in the middle of the night, to find a safe place for her children to sleep for the night.

76.     While the family was separated and living miles apart, JG and SP's child with disabilities did not make any improvements in school. The tumultuous living circumstances deprived the children of any stability needed for succeeding in school. Instead, JG and SP's children suffered from tiredness in the mornings from disrupting and often sleepless nights.

77.     SP's inability to provide her children with a stable home and one free from constant disruptions took its toll on her mentally and physically. She fell into depressions and was compelled to seek counseling to deal with thoughts of self-doubt and suicide. SP's deplorable situation even prompted her to consider whether to put her children up for adoption because of SP's feeling that she would never be able to provide them with the stability and home life they needed.

78.     SP tried to deal with her situation with medical treatment and medications to overcome her serious levels of stress and anxiety. SP's separation from JG served to increase her anxiety and stress over the entire situation. Her perception of life and her community changed for the worse and these circumstances impacted her marriage. SP had to confront daily feelings of being trapped by a government agency that was supposed to be helping her, and her grandmother frequently would have to talk SP out of calling 911 and she would stay up with SP to calm her down.

79.     On or about January 7, 2015, TMHA reopened its waiting list.

80.     On February 19, 2015, JG and SP reapplied with TMHA to participate in the housing voucher program. At the time of reapplication, the family was still living in separate homes.

**JG and SP File Housing Discrimination Complaint with HUD**

81.     On or about December 21, 2014, JG and SP filed an online complaint of discrimination with HUD, which was amended on November 30, 2015 and July 25, 2016, and

alleged that by denying their request for a reasonable accommodation to TMHA's policy requiring them to rent the Merriweather house once it had been inspected, Defendants had violated sections 804(f)(l), 804(f)(2), and 804(f)(3)(B) of the FHA.

82.     On March 5, 2015, according to the United States Postal Service's certified mail tracking records, TMHA received a Notification of Complaint letter from HUD at 1:53 p.m. HUD's letter did not disclose the identity of the complainants.

83.     On or about March 18, 2015, Defendants issued JG, SP and their minor children a two-bedroom voucher.

84.     When Defendants issued the two-bedroom voucher in March 2015, there was some confusion as JG and SP were unaware that they had only received a two-bedroom voucher as they had previously been approved, as a reasonable accommodation, for a four bed-room voucher in September 2014.

85.     On March 27, 2015, according to the United States Postal Service's certified mail tracking records, TMHA received a second Notification of Complaint letter from HUD at 12:09 p.m., that included a copy of the housing discrimination complaint that identified SP as the complainant.

**Defendants Learn of Housing Discrimination Complaint and Retaliate, Threaten, Intimidate, and Coerce**

86.     On March 27, 2015, the same say that Defendants received a copy of the housing discrimination complaint from HUD identifying SP as the complainant, Defendant Simeon prepared a Verification of Need Form for JG's signature and addressed to his medical provider at the dialysis center. Instead of asking JG sign the form, Simeon filled out the March 27, 2015 Verification of Need Form by attaching the signature page from JG's executed HUD-9886 Form, previously signed

on March 18, 2015. The HUD-9886 Form is completely unrelated to the Verification of Need Form and was not authorized for use for this purpose.

87.     HUD's verification guidance for Public Housing and Housing Choices Voucher Programs published in March 2004 confirms that HUD-9886 Form is solely used to obtain income information and it expressly prohibits the use of the form to obtain any other information.

88.     Misusing HUD 9886 Form to obtain information under false pretenses is a crime. The signature page of HUD 9886 Form, in relevant part, states: "Use of the information collected and based on the HUD 9886 is restricted to the purposes cited on the form HUD 9886. Any person who knowingly or willfully requests, obtains, or discloses any information under false pretenses concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5,000.

89.     Simeon intended to mislead JG's dialysis center and create the false pretense that JG had signed the March 27, 2015 Verification of Need Form when she attached the signature page from an unrelated HUD-9886 Form that JG signed more than a week earlier when, in fact, JG had not signed the Verification of Need Form and knew nothing about it.

90.     Defendants knew or should have known that JG did not sign the March 27, 2015 Verification of Need Form and that the Form was sent to JG's dialysis center without Plaintiffs-Intervenors' knowledge or consent.

91.     The HUD investigation revealed that Simeon filled out JG's March 27, 2015 Verification of Need Form she used a different version of the form than those previously used by TMHA in September 2014. The March 2015 version was intended by Defendants to mislead by the inclusion of additional language – which was not included on the 2014 Verification of Need Form

– that cites, at the bottom of the form, to 18 U.S.C. § 1001 and provides the following statement: "Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony of knowingly and willingly making false or Fraudulent statements to any department of the United States Government."

92.     Simeon added the language from 18 U.S.C. § 1001 to the March 27, 2015 Verification of Need Form in retaliation for, and to interfere with, the housing discrimination complaint that JG and SP filed with HUD.

93.     Defendants intended to communicate to JG's medical providers at the dialysis center the false pretense that 18 U.S.C. § 1001 applied to medical information supplied in response to a Verification of Need Form that Defendants knew had not been signed by JG but which they intended to falsely present as signed by JG by attaching his signature from another, unrelated document.

94.     During the HUD investigation, Defendants produced an October 2, 2015 Verification of Need Form for another voucher applicant with a disability (J.B.), that does not include the statutory language referencing 18 U.S.C. § 1001. J.B.'s Verification of Need Form provides the following justification for an extra bedroom: "[s]he needs [e]tra room to store medical supplies [and] equipment." Defendants granted J.B.'s request for an additional bedroom.

95.     Despite the absence of any pending reasonable accommodation request for an increase in JG and SP's voucher size when Simeon filled out the March 27, 2015 Verification of Need form, she wrote to JG's medical provider at the dialysis center inquiring as to special features.

96.     Simeon prepared the March 27, 2015 Verification of Need Form in retaliation for, and to interfere with, the housing discrimination complaint that JG and SP filed with HUD. The

complaint challenged as unlawful Defendants' failure to make reasonable accommodations and approve Plaintiffs-Intervenors for the four-bedroom Atlantic house.

97.     Simeon and the other Defendants realized that the phrase "designated solely for that purpose" in the October 8, 2014 letter from JG's nephrologist provided JG and SP with significant support for their discrimination claim. Specifically, the doctor stated in his letter of October 8th that "to perform peritoneal dialysis safely, it is our recommendation that [the] patient have a clean room in his house designated solely for that purpose." The Defendants knew that if they could convince JG's doctor to rewrite his recommendation without the phrase "designated solely for that purpose", then their chances of defending against the claim of discrimination for failing to make reasonable accommodations would tip in Defendants' favor.

98.     After they received JG and SP's complaint, Defendants knew that they needed direct access to JG's nephrologist and medical providers at the dialysis center without JG or SP's knowledge or interference and secure the best opportunity to persuade the doctor to change his recommendation in their favor.

99.     Defendants also realized that JG's doctor could more easily be persuaded to change his recommendation if faced with the threat of a felony for making a false or fraudulent statement to HUD.

100.    Simeon prepared the March 27, 2015 Verification of Need Form with a dummied up signature page so that Defendants could secure access to JP's doctor and medical providers at the dialysis center without JP's knowledge, and additional language from 18 U.S.C. § 1001 to put the doctor under a threat sufficient to  persuade him to change his recommendation and eliminate the phrase "designated solely."

**TMHA and Simeon Violate JG's Privacy Rights and Intimidate His Nephrologist With the Threat of a Federal Felony**

101.   TMHA and Simeon mailed the March 27, 2015 Verification of Need Form and its false pretenses to JP's dialysis center without his knowledge or consent and with intent to deceive.

102.   On April 6, 2015, Simeon had an unauthorized conversation with a registered nurse and Home Treatment Program Manager at the dialysis center by telephone. Simeon did not inform the nurse that JG had not signed the March 2015 Verification of Need Form and Simeon knew the nurse was speaking to her on the false pretense and mistaken belief that JG had signed the form and consented to disclosure of his medical information. JG, in fact, was unaware that Simeon was having direct communication with the dialysis center staff concerning his medical condition and need for an additional bedroom, and he had not provided any release for such conversation.

103.   During the unauthorized telephone call with Simeon on April 6, 2015, the nurse and Home Treatment Program Manager advised Simeon that JP's nephrologist was going to send TMHA the same letter he previously sent on October 8, 2014. Simeon responded by having an unauthorized discussion about JP's reasonable accommodation request – without his knowledge or consent – with the nurse.  This discussion led the nurse ultimately to capitulate to Simeon that JG did not need a separate bedroom for "taking his dialysis;" rather "he just needed a clear area."  Simeon confirmed during the HUD investigation that she did not ask the nurse at the dialysis center about the supply, delivery, or storage logistics which were also components that formed the basis of JG's need for different housing as noted the nurse's September 30, 2014 letter to TMHA.

104.   On April 9, 2015, JG's dialysis center mailed the nephrologist's previous letter of October 8, 2014 to Defendants as JG's circumstance remained unchanged. According to the nurse and Home Treatment Program Manager, Simeon made unauthorized contact with the dialysis center

on April 13, 2015 by telephone to advise that the nephrologist's letter now conflicted with the nurse's verbal opinion given over the telephone on April 6, 2015. Simeon requested a new letter dated within 90 days. Simeon did not inform the dialysis center staff member with whom she spoke that JG had not signed the March 2015 Verification of Need Form and Simeon knew the staff member was speaking to her on the false pretense and mistaken belief that JG had signed the form and consented to disclosure of his medical information.

105.    During the HUD investigation, JG provided the HUD investigator with a marked-up copy of the nephrologist's October 8, 2014 letter that he obtained from his patient file at the dialysis center.

106.    The mark-ups on the nephrologist's October 8, 2014 letter indicate that the date of the letter needed to be within 90 days, and the phrase "designated solely" was scratched out. An arrow on the letter then points to handwritten notes that state: "Conflicts with was told previously. Not need own room or as long as clean and wife with him."

107.    The last mark-up on the October 8, 2014 letter is Simeon's phone and fax numbers. According to the nurse and Home Treatment Program Manager at the dialysis center, these mark-ups were made by a secretary at the dialysis center during the April 6, 2015 phone call she had with Simeon.

108.    On or about April 20, 2015, as a result of unauthorized conversations with JG's medical providers at the dialysis center, Defendants received a revised letter from JG's nephrologist and the letter was changed to state, in relevant part, "To be able to perform peritoneal dialysis safely, it is our recommendation that patient have a clean room in his house for that purpose."

109.    The nurse and Home Treatment Program Manager at JG's dialysis center, during the HUD investigation, explained that she dictated the March 27, 2015 Verification of Need Form to

JG's doctor, which she verified included 18 U.S.C. § 1001 and the language about fraudulent statements. She also acknowledged that the referenced statutory code and related language on the March 27, 2015 Verification of Need Form, in her opinion, influenced the doctor's decision to revise his previous October 8, 2014 letter.

110.    On or about May 27, 2015 after JG and SP realized they had only received a two-bedroom voucher in March 2015, their lawyer sent Defendant Osman an email requesting a reasonable accommodation for a three-bedroom voucher.

111.    On or about  May 28, 2015, in response to JG and SP's reasonable accommodation request for a three bedroom voucher, Defendant Osman informed their  attorney by email that SP "must provide a Physicians [sic] name and address so that we can send a form to verify the need." Osman's statement was false and intended to deceive and create a false impression because he did not disclose that Defendants were already in contact with JG's doctor about his need for reasonable accommodation, and because Defendants knew the names of JG's and the child's respective doctors and address, were already in contact with JG's doctor about his need for reasonable accommodation, and had a practice of sending Verification of Need forms under false pretenses to verify a participant's need for reasonable accommodation.

112.    Around this time or shortly thereafter, SP asked JG's medical providers at the dialysis center if they had heard from Defendants in connection with a reasonable accommodation request for a three-bedroom voucher. The medical providers told SP and JG that TMHA and Simeon had been contacting the dialysis center since March 2015 and SP and JG were subsequently provided for the first time with knowledge and a copy of the March 27, 2015 Verification of Need Form.

113.    After SP learned of the unauthorized March 27, 2015 Verification of Need Form that Defendants sent to the dialysis center, she contacted the HUD investigator in Cleveland and

informed the investigator of TMHA's use of false Verification of Need Forms with dummied–up a signature page as well as Defendants' unauthorized contact and communication with JG's medical providers.

114.    HUD took the information supplied by SP and, upon information and belief, contacted TMHA, as well as TMHA's lawyers, Delbene Lapolla & Thomas, and demanded that TMHA put an end to all of its fraudulent and misleading actions taken in retaliation of JG and SP's housing discrimination complaint filed with HUD.

115.    The lawyers at Delbene Lapolla & Thomas, from the law firm's years of representing TMHA, were aware of and familiar with TMHA, Osman, and Simeon's operation and administration of the housing voucher program. From its representation of TMHA, as well as communications from the HUD investigator in 2015, Delbene Lapolla & Thomas were aware of TMHA's practice, and Simeon's decision here, of misusing Verification of Need Forms and HUD 9886 Forms to gain unauthorized access to voucher program participants' medical providers and medical information using false pretenses and a scheme to defraud.

116.    Similarly, from its representation of TMHA, Delbene Lapolla & Thomas had knowledge and was aware of TMHA, Osman, and Simeon's decision to notify Plaintiffs-Intervenors of their termination from the Section 8 voucher program without notifying them of their right to an informal hearing as required by federal law and TMHA's policies.

117.    Instead of withdrawing from representing TMHA because of TMHA, Osman, and Simeon's misuse of federal forms, practice of using false pretenses and schemes to defraud, and failure to properly notify voucher program participants of their rights, Delbene Lapolla & Thomas chose to join and participate in this misuse of federal forms and practice of using false pretenses and

schemes to defraud to gain unauthorized access to medical information and TMHA, Osman, and Simeon's failure to notify voucher participants of their rights.

118.    On or about June 15, 2015, because JG and SP's two-bedroom voucher was set to expire on June 16, 2015 and a request was made to extend the voucher, Osman communicated with the HUD investigator by email and informed the investigator that JG and SP could have an additional 30 days, however, he also stated that "we are still in need of medical verification as this is a new voucher."

119.    Subsequently, Simeon consulted with HUD's Office of Public Housing and Defendants ultimately increased JG and SP's two-bedroom voucher and reissued them a voucher for three bedrooms.

120.    On June 15, 2015, Osman communicated with the HUD investigators, Simeon, and Delbene Lapolla & Thomas by email and advised them that "[p]er a discussion with Siri Ott of the HUD Cleveland office regarding clean area vs clean rooms, TMHA has issued a new 3 bedroom voucher for [JG and SP]. It will expire in 60 days." Later that day, the HUD investigator sent an email to Osman, Delbene Lapolla & Thomas, and Simeon stating, "Thank you, Mr. Osman. I will relay to [Plaintiffs-Intervenors'] counsel."

121.    On June 15, 2015, the HUD investigator communicated with JG and SP's attorney and SP by email and advised, "I was able to get the Office of Public Housing to intercede. As a result TMHA has agreed to issue a new voucher for 3 bedrooms. Please relay to [SP.]"

122.    The HUD investigator stayed in contact with Delbene Lapolla & Thomas during this time. In a June 15, 2015 email to SP and her attorney, the HUD investigator stated that "As I explained to TMHA's counsel last week, this [new three-bedroom voucher] was an effort to get

TMHA to mitigate any potential future damage and to preserve [Plaintiffs-Intervenors'] participation in the voucher program."

123.    On September 1, 2015, JG and SP used their voucher to rent a three-bedroom home located in Warren.

124.    In the eleven months the family lived apart, JG was hospitalized on at least four occasions and twice contracted dialysis-related infections, which ultimately required that he return to in-clinic dialysis on August 25, 2015.

125.    The inability to live together also took a heavy emotional and physical toll on JG and SP and the children and caused strain to the marriage and life as a family. JG and SP had to wait over four months for TMHA's waiting list for housing to reopen.

## CAUSES OF ACTION

### COUNT ONE
### Constitutional Rights Pursuant to 42 U.S.C. § 1983
### Violation of Fourteenth Amendment Due Process Rights
### (Against Defendants TMHA and Osman and Simeon, in their Official Capacities)

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count One of their Intervening Complaint, allege:

126.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 126 all other allegations in this Intervening Complaint.

127.    Plaintiffs-Intervenors' claims in Count One arise under 42 U.S.C. § 1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Id*. Private individuals may bring lawsuits to enforce not only constitutional rights but also rights created by federal statutes.

128.     Defendants TMHA, Osman, and Simeon have deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment to the United States Constitution by depriving them of a hearing and an opportunity to confront and cross-examine witnesses used by Defendants TMHA and Osman to form the basis of the decision to terminate their participation in October 2014.

129.     These Defendants, by their actions described herein, violated clearly established law.

130.     As a direct and proximate result of the illegal conduct or actions of these Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

131.     Defendants TMHA, Osman, and Simeon's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.     Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B.     Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C.     Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from terminating

Plaintiffs-Intervenors' § 8 housing voucher prior to offering notice and an opportunity for a hearing;

D.   Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E.   Award Plaintiffs-Intervenors punitive damages;

F.   Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G.   Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H.   Grant such other relief as is just.

**COUNT TWO**
**Constitutional Rights Pursuant to 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Due Process Rights**
**(Against Defendants Osman and Simeon, Individually)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Two of their Intervening Complaint, allege:

132.   Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 132 all other allegations in this Intervening Complaint.

133.   Plaintiffs-Intervenors' claims in Count Two arise under 42 U.S.C. § 1983.

134.   Defendants Osman and Simeon have deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment to the United States Constitution by depriving them of a hearing and an opportunity to confront and cross-examine witnesses used by Defendants TMHA and Osman to form the basis of the decision to terminate their participation in October 2014.

135.    As a direct and proximate result of the illegal conduct or actions of these Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

136.    Defendants Osman and Simeon's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.    Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B.    Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C.    Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from terminating Plaintiffs-Intervenors' § 8 housing voucher prior to offering notice and an opportunity for a hearing;

D.    Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E.    Award Plaintiffs-Intervenors punitive damages;

F.    Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G.      Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the

law; and

H.      Grant such other relief as is just.

**COUNT THREE**
**Constitutional Rights Pursuant to 42 U.S.C. 1983**
**Negligent Hiring and Training**
**(Against Defendant TMHA)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Three of their

Intervening Complaint, allege:

137.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in

paragraph 137 all other allegations in this Intervening Complaint.

138.    Plaintiffs-Intervenors' claims in Count Three arise under 42 U.S.C. § 1983.

139.    Upon information and belief, it is customary for Osman and Simeon, as well as other

officials at TMHA, to deprive persons who are terminated from participating in the Section8 voucher

program of their rights to Due Process even though that custom and practice has not received formal

approval through TMHA's official decision-making channels.

140.    Upon information and belief, such conduct at TMHA practices at the housing

authority so permanent and well–settled as to constitute a custom or usage with the force of law.

141.    TMHA had actual or constructive knowledge of and acquiesced in the

unconstitutional custom or practice of depriving persons who are terminated from participating in

the Section8 voucher program of their rights to Due Process, and such knowledge and acquiescence

and failure to train against such custom or practice is the predicate for a finding of an

unconstitutional policy or custom at TMHA.

142. Upon information and belief, TMHA inadequately trains its employees against depriving participants who are terminated from the Section8 voucher program of their rights to Due Process in violation of the Fourteenth Amendment, and TMHA's failure to train amounts to deliberate indifference to the rights of these persons and establishes TMHA as the moving force behind these continued and pervasive constitutional violations.

143. The constitutional duty to provide persons who are terminated from participating in TMHA's Section 8 voucher program is a clear constitutional duty implicated in recurrent situations that TMHA employees who administer the program are certain to face, and failure to inform and train those employees of that duty will create a high risk that constitutional violations will ensue.

144. Upon information and belief, the pattern of unconstitutional conduct at TMHA of depriving persons who are terminated from participating in the Section8 voucher program is so pervasive as to establish actual or constructive knowledge of the illegal conduct on the part of TMHA's policy makers, whose deliberate indifference to the unconstitutional practice is evidenced by a failure to correct the situation after the need for training became obvious.

145. As a direct and proximate result of the illegal conduct or actions of Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

146. Defendant TMHA's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.      Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B.      Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C.      Issue a permanent injunction forbidding Defendant, its agents, employees, and all persons acting in concert or participation with it from terminating Plaintiffs-Intervenors' § 8 housing voucher prior to offering notice and an opportunity for a hearing;

D.      Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E.      Award Plaintiffs-Intervenors punitive damages;

F.      Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G.      Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H.      Grant such other relief as is just.

**COUNT FOUR**
**Constitutional Rights Pursuant to 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Due Process Rights**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Four of their Intervening Complaint, allege:

147.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 147 all other allegations in this Intervening Complaint.

148.     Plaintiffs-Intervenors' claims in Count Four arise under 42 U.S.C. § 1983.

149.     Defendants TMHA, Osman, and Simeon have deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment to the United States Constitution by sending JG and SP a letter, after repeated requests for reasonable accommodation due to disabilities, stating that their voucher assistance had been terminated as of October 3, 2014 because they had "failed to sign documents and move into [a] unit that had passed inspection[,]" but failing to notifying or offering them the opportunity to request an informal hearing prior to termination of their § 8 housing voucher program that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses.

150.     These Defendants, by their actions described herein, violated clearly established law.

151.     As a direct and proximate result of the illegal conduct or actions of these Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

152.     Defendants TMHA, Osman, and Simeon's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.      Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B.      Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C.      Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from failing to notify and offer them the opportunity to request an informal hearing prior to their termination that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses;

D.      Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E.      Award Plaintiffs-Intervenors punitive damages;

F.      Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G.      Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H.      Grant such other relief as is just.

**COUNT FIVE**
**Constitutional Rights Pursuant to 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Due Process Rights**
**(Against Defendants Osman and Simeon, Individually)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Four of their Intervening Complaint, allege:

153.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 153 all other allegations in this Intervening Complaint.

154.    Plaintiffs-Intervenors' claims in Count Five arise under 42 U.S.C. § 1983.

155.    Defendants Osman and Simeon have deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment to the United States Constitution by sending JG and SP a letter, after repeated requests for reasonable accommodation due to disabilities, stating that their voucher assistance had been terminated as of October 3, 2014 because they had "failed to sign documents and move into [a] unit that had passed inspection[,]" but failing to notifying or offering them the opportunity to request an informal hearing prior to their termination that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses.

156.    These Defendants, by their actions described herein, violated clearly established law.

157.    As a direct and proximate result of the illegal conduct or actions of these Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

158.    Defendants Osman and Simeon's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.    Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B.    Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C.    Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from failing to notify and offer them the opportunity to request an informal hearing prior to their termination that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses;

D.    Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E.    Award Plaintiffs-Intervenors punitive damages;

F.    Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G.    Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H.    Grant such other relief as is just.

**COUNT SIX**
**Constitutional Rights Pursuant to 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Due Process Rights**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Six of their Intervening Complaint, allege:

Page 37 of 72

159.     Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 159 all other allegations in this Intervening Complaint.

160.     Plaintiffs-Intervenors' claims in Count Six arise under 42 U.S.C. § 1983.

161.     Defendants TMHA, Osman, and Simeon have deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment to the United States Constitution by filling out a Verification of Need Form for JG's signature and addressed to JG's dialysis center and attaching to that Form the signature page from a HUD 9886 Form executed by JG and SP to create the false pretense that JG had signed the Verification of Need Form dated March 27, 2015, and adding language to the March 27, 2015 Verification of Need Form from 18 U.S.C. § 1001 that states: "Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony of knowingly and willingly making false or Fraudulent statements to any department of the United States Government" to coerce JG's medical providers and doctor, under false threat of a felony charge, to change and eliminate language in the doctor's recommendation on the issue of reasonable accommodation that supported JG and SP's claims of discrimination against Defendants in their complaint filed with HUD.

162.     These Defendants, by their actions described herein, violated clearly established law.

163.     As a direct and proximate result of the illegal conduct or actions of these Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

164. Defendants TMHA, Osman, and Simeon's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A. Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B. Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C. Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from terminating misusing any Verification of Need Forms, HUD 9886 Forms, or other forms used in connection with the § 8 housing voucher administered by Defendants in any way that is unlawful, creates a false pretense or part of a scheme to defraud;

D. Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E. Award Plaintiffs-Intervenors punitive damages;

F. Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G. Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H. Grant such other relief as is just.

**COUNT SEVEN**
**Constitutional Rights Pursuant to 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Due Process Rights**
**(Against Defendants Osman and Simeon, Individually)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Seven of their Intervening Complaint, allege:

165.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 165 all other allegations in this Intervening Complaint.


166.    Plaintiffs-Intervenors' claims in Count Seven arise under 42 U.S.C. § 1983.

167.    Defendants Osman and Simeon have deprived Plaintiffs-Intervenors of federally subsidized housing under the Housing Choice Voucher Program without due process of law in violation of the Fourteenth Amendment to the United States Constitution by filling out a Verification of Need Form for JG's signature and addressed to JG's dialysis center and attaching to that Form the signature page from a HUD 9886 Form executed by JG and SP to create the false pretense that JG had signed the Verification of Need Form dated March 27, 2015, and adding language to the March 27, 2015 Verification of Need Form from 18 U.S.C. § 1001 that states: "Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony of knowingly and willingly making false or Fraudulent statements to any department of the United States Government" to coerce JG's medical providers and doctor, under false threat of a felony charge, to change and eliminate language in the doctor's recommendation on the issue of reasonable accommodation that supported JG and SP's claims of discrimination against Defendants in their complaint filed with HUD.

168.    These Defendants, by their actions described herein, violated clearly established law.

169.    As a direct and proximate result of the illegal conduct or actions of these Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced

emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

170. Defendants Osman and Simeon's conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A. Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B. Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C. Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from terminating misusing any Verification of Need Forms, HUD 9886 Forms, or other forms used in connection with the § 8 housing voucher administered by Defendants in any way that is unlawful, creates a false pretense or part of a scheme to defraud;

D. Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E. Award Plaintiffs-Intervenors punitive damages;

F. Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G. Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H. Grant such other relief as is just.

**COUNT EIGHT**
**United States Housing Act of 1937 Rights Pursuant to 42 U.S.C. §§ 1437d, 1437f**
**Wrongful Termination of Participation in Section 8 Voucher Program**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Eight of their Intervening Complaint, allege:

171.     Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 171 all other allegations in this Intervening Complaint.

172.     Defendants violated the United States Housing Act of 1937, 42. U.S.C. 1437d(k), 42 U.S.C. § 1437f, and its implementing regulations in 24 C.F.R. §982.555(c)(2) and § 982.555(e), by terminating Plaintiffs-Intervenors from the Section 8 housing choice voucher program without providing Plaintiffs-Intervenors with written notice of the opportunity to request an informal hearing prior to termination of their Section 8 benefits and an opportunity to participate in a hearing that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses.

173.     As a direct and proximate result of the illegal conduct or actions of Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and  increased endangerment of life.

174.      Defendants' conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A. Declare that Defendants' policies, practices, and conduct utilized for terminating Plaintiffs-Intervenors from the § 8 Housing Choice Voucher Program as alleged herein, are unlawful;

B. Declare that Defendants' acts and omissions as described above violate the Fourteenth Amendment of the United States Constitution;

C. Declare that Defendants' acts and omissions as described above to be in violation of 42 U.S.C. §1437d, 42 U.S.C. §1437f and their implementing provisions in 24 C.F.R. §982.555(c)(2), (e)(5), and (e)(6);

D. Issue a permanent injunction forbidding Defendants, their agents, employees, and all persons acting in concert or participation with any of them from terminating misusing  any Verification of Need Forms, HUD 9886 Forms, or other forms used in connection with the § 8 housing voucher administered by Defendants in any way that is unlawful, creates a false pretense or part of a scheme to defraud;

E. Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

F. Award Plaintiffs-Intervenors punitive damages;

G. Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

H. Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

I. Grant such other relief as is just.

**COUNT NINE**
**Fair Housing Act Rights Pursuant to 42 U.S.C. § 3604**
**Discrimination and Failure to Make Reasonable Accommodation Because of Disability**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Nine of their Intervening Complaint, allege:

175.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 175 all other allegations in this Intervening Complaint.

176.    By the actions and statements set forth above, Defendants have:

    a.    discriminated in the rental of, or otherwise made unavailable or denied a dwelling because of disability, in violation of Section 804(f)(1) of the FHA, 42 U.S.C. § 3604(f)(1);

    b.    discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of Section 804(f)(2) of the FHA, 42 U.S.C. § 3604(f)(2); and

    c.    refused to make reasonable accommodations in rules, practices, or policies, when such accommodations may be necessary to afford persons with disabilities the equal opportunity to use and enjoy housing, in violation of Section 804(f)(3) of the FHA, 42 U.S.C. § 3604(f)(3).

177.    As a direct result of the illegal conduct or actions of Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

178. Defendants' conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A. Declare that Defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et. seq.*;

B. An order requiring Defendants to take all necessary and appropriate affirmative steps to correct the continuing effects of its past and present discriminatory practices;

C. An order requiring such action by the Defendants as may be necessary to restore Plaintiff-Intervenors to the position they would have occupied but for such discriminatory conduct;

D. Award Plaintiffs-Intervenors monetary damages to the Complainants, pursuant to 42 U.S.C. §§ 3612((o)(3) and 3613(c)(1);

E. Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

E. Award Plaintiffs-Intervenors punitive damages;

F. Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

G. Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

H. Grant such other relief as is just.

**COUNT TEN**
**Fair Housing Act Rights Pursuant to 42 U.S.C. § 3604**
**Discrimination and Failure to Make Reasonable Accommodation Because of Race**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Ten of their Intervening Complaint, allege:

179.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 179 all other allegations in this Intervening Complaint.

180.    By the actions and statements set forth above, Defendants have:

   a.    discriminated in the rental of, or otherwise made unavailable or denied a dwelling because of race, in violation of Section 804(b) of the FHA, 42 U.S.C. § 3604(b);

   b.    discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of race, in violation of Section 804(b) of the FHA, 42 U.S.C. § 3604(b); and

   c.    refused because of race to make reasonable accommodations in rules, practices, or policies, when such accommodations may be necessary to afford persons with disabilities the equal opportunity to use and enjoy housing, in violation of Sections 804(b) and 804(f)(3) of the FHA, 42 U.S.C. §§ 3604(b) and 3604(f)(3).

181.    As a direct result of the illegal conduct or actions of Defendants, JG, SP, and the minor children AP and MH have suffered injury and damages and experienced emotional pain,

suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

182.    Defendants' conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.    Declare that Defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et. seq.*;

B.    An order requiring Defendants to take all necessary and appropriate affirmative steps to correct the continuing effects of its past and present discriminatory practices;

C.    An order requiring such action by the Defendants as may be necessary to restore Plaintiff-Intervenors to the position they would have occupied but for such discriminatory conduct;

D.    Award Plaintiffs-Intervenors monetary damages to the Complainants, pursuant to 42 U.S.C. §§ 3612((o)(3) and 3613(c)(1);

E.    Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

F.    Award Plaintiffs-Intervenors punitive damages;

G.    Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

H.    Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

I.    Grant such other relief as is just.

**COUNT ELEVEN**
**Fair Housing Act Rights Pursuant to 42 U.S.C. § 3617**
**Retaliation, Coercion, Intimidation, Threatening or Interference**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Eleven of their Intervening Complaint, allege:

183.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 183 all other allegations in this Intervening Complaint.

184.    By the actions and statements set forth above, Defendants have unlawfully retaliated, coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, any right granted or protected by the Fair Housing Act, 42 U.S.C. §§ 3603, 3604, 3605, or 3606 by:

    a.    Sending JG and SP a letter, after repeated requests for reasonable accommodation due to disabilities, stating that their voucher assistance had been terminated as of October 3, 2014 because they had "failed to sign documents and move into [a] unit that had passed inspection[,]" but failing to notifying or offering them the opportunity to request an informal hearing prior to termination of their § 8 housing voucher program  that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses;

    b.    Terminating JG and SP's voucher assistance on October 3, 2014 when the four-bedroom voucher that Defendants issued in response to JG and SP's

request for reasonable accommodation due to disabilities was still valid

and did not expire for another thirty days.

c.  Filling out a Verification of Need Form for JG's signature and addressed

to JG's dialysis center and, instead of having JG sign it, attaching to that

Form the signature page from a HUD 9886 Form executed by JG and SP,

and thereby creating the false pretense, as part of a scheme to defraud, that

JG had signed the Verification of Need Form dated March 27, 2015.

d.  Adding language to the March 27, 2015 Verification of Need Form from

18 U.S.C. § 1001 that states: "Title 18, Section 1001 of the U.S. Code

states that a person is guilty of a felony of knowingly and willingly making

false or Fraudulent statements to any department of the United States

Government" as part of the scheme to defraud and coerce JG's medical

providers and doctor, under false threat of a felony charge, to change and

eliminate language in the doctor's recommendation on the issue of

reasonable accommodation that supported JG and SP's claims of

discrimination against Defendants in their complaint filed with HUD;

e.  Misusing a Verification of Need Form and a HUD 9886 Form and sending

it to JG's medical providers under false pretenses and a scheme to defraud

in March 2015 in order to secure secret and unauthorized communications

with JG's medical providers and obtain unauthorized access to his medical

information after JG and SP filed a housing discrimination complaint with

HUD;

f.     Having unauthorized contacts with JG's medical providers on April 6,
       2015 and access to his medical information under false pretenses and
       continuing scheme to defraud for the purpose of persuading JG's medical
       providers and doctor, under false threat of a felony charge, to change and
       eliminate language in the doctor's recommendation on the issue of
       reasonable accommodation that supported JG and SP's claims of
       discrimination against Defendants in their complaint filed with HUD;

g.     Having unauthorized contact by telephone with JG's medical providers on
       April 13, 2015 and access to his medical information under false pretenses
       and continuing scheme to defraud for the purpose of getting JG's medical
       providers and doctor, under false threat of a felony charge, to change and
       eliminate language in the doctor's recommendation on the issue of
       reasonable accommodation that supported JG and SP's claims of
       discrimination against Defendants in their complaint filed with HUD;

h.     Coercing JG's medical providers and nephrologist, after using false
       pretenses, a continuing scheme to defraud, and the false threat of a felony
       charge, to change and eliminate language in the doctor's recommendation
       on the issue of reasonable accommodation that supported JG and SP's
       claims of discrimination against Defendants in their complaint filed with
       HUD;

185.   As a direct and proximate result of the illegal conduct or actions of Defendants,

JG, SP, and the minor children AP and MH have suffered injury and damages and experienced

emotional pain, suffering, mental anguish, embarrassment, humiliation, loss of enjoyment of life, aggravation of disabilities, and increased endangerment of life.

186.    Defendants' conduct was motivated by evil motive or intent and involves reckless or callous indifference to Plaintiffs-Intervenors' federally protected rights and supports an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.    Declare that Defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et. seq.*;

B.    An order requiring Defendants to take all necessary and appropriate affirmative steps to correct the continuing effects of its past and present discriminatory and retaliatory practices;

C.    An order requiring such action by the Defendants as may be necessary to restore Plaintiff-Intervenors to the position they would have occupied but for such discriminatory and retaliatory conduct;

D.    Award Plaintiffs-Intervenors monetary damages to the Complainants, pursuant to 42 U.S.C. §§ 3612((o)(3) and 3613(c)(1);

E.    Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

F.    Award Plaintiffs-Intervenors punitive damages;

G.    Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

H.    Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

I.    Grant such other relief as is just.

**COUNT TWELVE**
**RICO, 18 U.S.C. § 1962(c)**
**Violation of RICO**
**(Against Defendants Osman and Simeon, Individually)**

187.    Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Twelve of their Intervening Complaint, allege:

188.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 188 all other allegations in this Intervening Complaint.

189.    RICO, 18 U.S.C. §§ 1961-1968, permits claimants in a civil action to recover treble damages for "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

190.    RICO makes it unlawful "for any person employed by or associated with any enterprise" to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

191.    RICO defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within ten years. 18 U.S.C. § 1961(5). "Racketeering activity" includes extortion and acts of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1961(1)(B).

192.    The term "extortion" under The Hobbs Act, 18 U.S.C. §1951, means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

193.    Wire fraud in violation of 18 U.S.C. § 1343 occurs when a person, "having devised or intending to devise any scheme or artifice to defraud," transmits or causes to be transmitted by means of wire" any writings for the purpose of executing such scheme or artifice.

194.     Mail fraud in violation of 18 U.S.C. § 1341 occurs when a person, "having devised or intending to devise any scheme or artifice to defraud," for the purpose of executing such scheme or artifice or attempting so to do, "places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service[.]"

195.     RICO prohibits conducting the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c) .

196.     RICO  defines "enterprise" as "any individual, partnership, corporation, or other legal entity." 18 U.S.C. 1961(4).

**RICO Enterprise**

197.     Defendant Trumbull Metropolitan Housing Authority, an entity created by statute, constituted an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and has an independent existence and is distinct from the pattern of racketeering alleged herein.

198.     This enterprise receives federal financial assistance through an Annual Contributions Contract with HUD and uses this funding, in part, to finance and administer a housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1473(f) and the enterprise's activities therefore affect interstate commerce.

199.     Defendants Osman and Simeon are each a person within the meaning of 18 U.S.C. § 1961(d) and separate from the enterprise.

200.     Osman, was employed by the enterprise and, as Assistant Director of TMHA, was in charge of TMHA's operations and the housing voucher program it administered. As such, he was in charge of monitoring, supervising, and participated in the operation or management of the

enterprise and in the racketeering scheme at issue, but such acts were not within the scope of his authority as an employee of TMHA.

201.    Simeon, Voucher Program Coordinator at TMHA, was employed by the enterprise and in charge of TMHA's voucher program and operations. As such, she and participated in the operation or management of the enterprise and was in charge of setting up, orchestrating, and participating in the entire racketeering scheme at issue,  but such acts were not within the scope of her authority as an employee of TMHA.

202.    Defendants Osman and Simeon's scienter is clearly established from their pattern and practices at issue. Moreover, these Defendants continued with their false pretenses and fraudulent conduct nonchalantly even though they knew of their falsity.

203.     Osman and Simeon participated and, with other third parties known to them, conspired to manage and participate in the affairs of the enterprise through a pattern of racketeering activity, as alleged herein, all in violation of 18 U.S.C. § 1962(c).

**Mail Fraud Violations**

204.    On October 6, 2014, Defendants mailed JG and SP a letter stating that their voucher assistance had been terminated as of October 3, 2014 because they had "failed to sign documents and move into [a] unit that had passed inspection[,]" but fraudulently and intentionally omitting any  notice or offer of the opportunity to request an informal hearing prior to termination of their Section 8 benefits that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses.

205.     On or about March 27, 2015, Defendants mailed JG's dialysis center a Verification of Need Form addressed to the dialysis center in Pennsylvania with an attached signature page from an unrelated HUD 9886 Form with JG and SP's signatures, all intended to create the false pretense that JG had signed the Verification of Need Form and as part of a scheme to defraud in order to secure secret and unauthorized communications with JG's medical providers and obtain unauthorized access to his medical information.

206.     On April 20, 2015, Defendants received by mail a revised recommendation from JG's nephrologist who, under Defendants' false pretenses, continuing scheme to defraud, and the false threat of a felony charge, changed and eliminated language in his prior recommendation on the issue of reasonable accommodation that had supported JG and SP's claims of discrimination against Defendants in their complaint filed with HUD.

207.     Osman and Simeon knew, expected, and reasonably foresaw, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential party of the scheme.

208.     Osman and Simeon willfully and with intent to mislead concealed the material facts from JG's medical providers and dialysis center and from Plaintiffs-Intervenors as referred to above.

209.     JG's medical providers and dialysis center relied upon Osman and Simeon's misrepresentations, and such reliance was reasonable.

210.     Osman and Simeon willfully and with intent to conceal from Plaintiffs-Intervenors concealed their use of false pretenses and continuing scheme to defraud as referred to above, and Plaintiffs-Intervenors acted without knowledge of such conduct, all to their detriment.

211.    Osman and Simeon's misconduct was deliberate, willful, corrupt, and fraudulent.

**Wire Fraud Violations**

212.    On April 6, 2015, Simeon spoke to JG's medical providers by telephone and gained access to his medical information under false pretenses and in connection with a continuing scheme to defraud in order to interfere illegally with JG and SP's exercise of federal rights and to persuade JG's medical providers and doctor, under false threat of a felony charge, to change and eliminate language in the doctor's recommendation on the issue of reasonable accommodation that supported JG and SP's claims of discrimination against Defendants in their complaint filed with HUD;

213.    On April 13, 2015, Simeon spoke with JG's medical providers by telephone and gained access to his medical information under false pretenses and in connection with a continuing scheme to defraud in order to interfere illegally with JG and SP's exercise of federal rights and to persuade JG's medical providers and doctor, under false threat of a felony charge, to change and eliminate language in the doctor's recommendation on the issue of reasonable accommodation that supported JG and SP's claims of discrimination against Defendants in their complaint filed with HUD.

214.    Osman and Simeon knew, expected, and reasonably foresaw, and intended that the facilities of the wires would be used in furtherance of the racketeering scheme, and that such use was an essential party of the scheme.

215.    Osman and Simeon willfully and with intent to mislead concealed the material facts from JG's medical providers and dialysis center and from Plaintiffs-Intervenors as referred to above.

216.    JG's medical providers and dialysis center relied upon Osman and Simeon's misrepresentations, and such reliance was reasonable.

217.    Osman and Simeon willfully and with intent to conceal from Plaintiffs-Intervenors concealed their use of false pretenses and continuing scheme to defraud as referred to above, and Plaintiffs-Intervenors acted without knowledge of such conduct, all to their detriment.

218.    Osman and Simeon's misconduct was deliberate, willful, corrupt, and fraudulent.

**Extortion**

219.    Osman and Simeon wrongfully took Plaintiffs-Intervenors' property interest of participating in the § 8 Housing Choice Voucher Program when Defendants, under color of official right and with an intent to obtain by means that in justice and equity Defendants were not entitled to obtain, terminated Plaintiffs-Intervenors' voucher assistance and participation in the § 8 voucher program claiming that JG and SP  had "failed to sign documents and move into [a] unit that had passed inspection[,]" and fraudulently and intentionally omitted in their letter of termination any notice or offer of the opportunity to request an informal hearing prior to termination of their Section 8 benefits  that complies with applicable procedures, 24 C.F.R. § 982.555(e) including, but not limited to, appearing with counsel, presenting evidence, confronting witnesses, and cross-examining those witnesses, all in violation of Plaintiffs-Intervenors' Due Process rights under the Fourteenth Amendment.

220.    Osman and Simeon's misconduct was deliberate, willful, corrupt, and fraudulent.

**Pattern of Racketeering Activity**

221.    The acts identified above had the same or similar purposes, results, participants, victims and methods of commission, and were otherwise interrelated by distinguishing

characteristics and were not isolated events. The pattern of racketeering activity engaged in by Osman and Simeon consisted of a scheme executed from October 2014, and continuing to date, and that pattern included multiple predicate acts of extortion.

222. The racketeering acts identified herein were related to one another and formed a pattern of racketeering activity in that they: (a) were in furtherance of a common goal of fraud, deception and deprivation of rights; (b) used similar methods and standard manners of deception, misleading, and deprivation; (c) had similar participants; and (d) had similar victims.

223. The acts of racketeering activity extended over a substantial period of time from October 2014, and continue to this day. They were sufficiently continuous to form a pattern of racketeering activity.

224. Osman and Simeon participated in the scheme through themselves, TMHA, and others whose identities are known only to Defendants at this time. Defendants benefitted from the scheme. Defendants each knew, enabled, and actively participated in the racketeering scheme.

225. Osman and Simeon's participation was critical to the racketeering scheme. Each of them enabled, conducted, maintained, aided, and abetted the racketeering scheme by:

      a.    Drafting and preparing letters, forms and other documents;

      b.    Supervising, conducting, and monitoring the conduct of the fraudulent scheme;

      c.    Concealing the scheme or, alternatively, consciously avoiding discovery of the scheme;

      d.    encouraging third parties to participate in the racketeering scheme;

e.  wilfully violating, or being recklessly indifferent to, mandatory requirements of federal law and procedure concerning racketeering, and the misuse of governmental authority; and

f.  Wilfully violating or being recklessly indifferent to their legal obligations to comply with federal and state laws.

226.  The precise role played by Osman and Simeon and others at TMHA is known only to Defendants at this time. Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of Defendants.

227.  Plaintiffs-Intervenors have been injured in their business or property by reason of Osman and Simeon's violation of RICO, 18 U.S.C. §1962(c). As a direct and proximate result of these violations, Plaintiffs-Intervenors have been injured in that, *inter alia*, they had to spend money and resources and incur bills and expenses responding to, as well as compensating for, Defendants's misconduct, fraud, and deception and the results and consequences thereof.

228.  By reason of this violation of 18 U.S.C. §1964(c), Plaintiffs-Intervenors are entitled to recover from Defendants three times their damages plus prejudgment interest, post- judgment interest, costs and attorney's fees.

229.  The Defendants' actions and statements as set forth above were intentional, willful, corrupt, and in callous disregard for the rights of JG, SP, and the minor children AP and MH, and support an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.  Award Plaintiffs-Intervenors  damages in an amount to be determined at trial and duly treble those damages in accordance with 18 U.S.C. § 1964(c);

B.      Award Plaintiffs-Intervenors punitive damages;

C.      Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

D.      Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under 18 U.S.C. § 1964(c); and

E.      Grant such other relief as is just.

## COUNT THIRTEEN
## RICO, 18 U.S.C. § 1962(d)
## Conspiracy to Violate RICO
## (Against All Defendants)

230.      Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Thirteen of their Intervening Complaint, allege:

231.      Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 231 all other allegations in this Intervening Complaint.

232.      RICO, 18 U.S.C. § 1962(d) makes it "unlawful to conspire to violate" 18 U.S.C. § 1962(c). Hence, § 1962(d) makes it unlawful to conspire to conduct the affairs of an enterprise through a pattern of racketeering activity.

233.      A conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) is established if the defendant associated with an enterprise which affected interstate commerce and the defendant objectively manifested an agreement to participate in the affairs of the enterprise.

234.      A conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) is established if: (1) an enterprise existed; (2) the enterprise affected interstate or foreign commerce; (3) the defendant associated with the enterprise; and (4) the defendant objectively manifested an agreement to participate in the affairs of the enterprise.

235.    A tacit understanding between the conspirators shown wholly through the circumstantial evidence of each defendant's actions is sufficient. Proof of an express agreement is not required.

236.    A conspiracy to violate RICO may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.

237.    Plaintiffs need not prove that each alleged conspirator agreed that he or she would be the one to commit the two predicate acts required under that statute.

238.    A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.

239.    A violation of 18 U.S.C. § 1962(d) intentionally omits two elements necessary to prove a violation of § 1962(c): The requirement that the defendant participated, directly or indirectly, in the conduct of the affairs of the enterprise, and the requirement that the defendant participated in the enterprise through a pattern of racketeering activity by committing at least two racketeering (predicate) acts.

**Association-in-Fact RICO Enterprise**

240.    18 U.S.C. § 1962(d) makes it unlawful to conspire to conduct the affairs of an enterprise through a pattern of racketeering activity. RICO defines "enterprise" to include any "group of individuals associated in fact." 18 U.S.C. 1961(4). The essence of an

'association in fact' is that it is not a legitimate business or other entity operating in the public eye.

241.    The RICO enterprise must exhibit three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering.

242.    The RICO enterprise consists of the association-in-fact of TMHA, Osman, Simeon, and Delbene Lapolla & Thomas. The enterprise had as its common purpose the administration of TMHA's housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937.

243.    TMHA did business in connection with the enterprise as a housing authority and administered a housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937 and used, among other things, Verification of Need Forms, HUD 9886 Forms, and letters to voucher program participants notifying them of decisions to terminate their participation in the § 8 voucher program. TMHA also did business as a housing authority beyond just the housing voucher program.

244.    Osman did business in connection with the enterprise by overseeing, supervising, monitoring, and administering the housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937, supervised persons involved with the voucher program, including Simeon, and used, among other things, Verification of Need Forms, HUD 9886 Forms, and letters to voucher program participants notifying them of decisions to terminate their participation in the § 8 voucher program. Osman also had other responsibilities at TMHA beyond just the housing voucher program.

245.    Simeon did business in connection with the enterprise by administering, overseeing, and monitoring the housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937 and used, among other things, Verification of Need Forms, HUD 9886 Forms, and letters to voucher program participants notifying them of decisions to terminate their participation in the § 8 voucher program. Simeon also had other responsibilities at TMHA beyond just the housing voucher program.

246.    Delbene Lapolla & Thomas did business in connection with the enterprise serving as a law firm representing and counseling TMHA, Osman, and Simeon in connection with the administration of the housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937 and their use of, among other things, Verification of Need Forms, HUD 9886 Forms, and letters to voucher program participants notifying them of decisions to terminate their participation in the § 8 voucher program. Delbene Lapolla & Thomas had other clients beyond just TMHA.

247.    The enterprise had as its common purpose the administration the housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937 through the misuse of Verification of Need Forms and HUD 9886 Forms, the use of false pretenses and schemes to defraud to gain unauthorized access to voucher participants' medical providers and medical information, and terminating persons' participation in the § 8 voucher program without notifying participants of their rights under federal law and TMHA policy, all in violation of federal law and Due Process rights under the Fourteenth Amendment.

248.    The enterprise operated with a well-defined structure for decision-making. TMHA, through Osman and Simeon had the most significant degree of control over the

affairs of the enterprise. They were responsible for the administration of the housing voucher program.

249.    TMHA, Osman, and Simeon also had contact from time to time with Delbene LaPolla & Thomas concerning the voucher program, and the law firm had knowledge and was aware of their practices and methods in administering the voucher program.

250.    The enterprise operated with continuity of personnel. TMHA, Osman, and Simeon, as the administrators of the voucher program, have remained in place and in control throughout the endeavor.

251.    Delbene Lapolla & Thomas had an ongoing relationship with TMHA and associated with the enterprise throughout the endeavor.

252.    The enterprise had an ascertainable structure which functioned separate and apart from the pattern of racketeering activity related to voucher program. Putting the predicate acts of extortion, mail fraud and wire fraud, the enterprise had an on-going structure and its members were not solely engaged in sporadic and pernicious criminal activity.

253.    TMHA, as a housing authority, engaged in lawful activity unrelated to the housing voucher program.

254.    Osman and Simeon, as employees of TMHA, engaged in various activities unrelated to the housing voucher program.

255.    Delbene Lapolla & Thomas, as a law firm representing TMHA, did legal work for TMHA unrelated to the housing voucher program.

256.    If the predicate acts related to the enterprise ceased, Defendants each remained a viable entity or individual and remained intact.

257.    TMHA receives federal financial assistance through an Annual Contributions Contract with HUD and uses this funding, in part, to finance and administer a housing voucher program and federal Housing Choice Voucher Program under § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1473(f) and the enterprise's activities therefore affect interstate commerce.

258.    TMHA, Osman, Simeon, and Delbene Lapolla & Thomas communicated with, requested information from, and acted on instructions from each other, and each conspirator played some role in the conception, creation, or execution of the scheme and assumed some part in directing the affairs of the enterprise.

259.    TMHA, Osman, Simeon, and Delbene Lapolla & Thomas agreed to conduct or participate in the affairs of the RICO Enterprise and agreed to commit or agreed that others of them would commit acts of extortion, mail fraud or wire fraud, as their regular way of conducting the affairs of the enterprise.

260.    TMHA, Osman, Simeon, and Delbene Lapolla & Thomas objectively manifested an agreement to commit substantive RICO violations and to commit two or more predicate acts of extortion, mail fraud, and wire fraud through their participation in the conduct of the affairs of the enterprise.

261.    TMHA, Osman, Simeon, and Delbene Lapolla & Thomas knew that the predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. Their conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(d).

262. TMHA, Osman, Simeon, and Delbene Lapolla & Thomas agreed and combined with each other, and with persons known and unknown, to do a criminal or unlawful act, or a lawful act by criminal or unlawful means.

263. TMHA, Osman, Simeon, and Delbene Lapolla & Thomas's conduct was deliberate, willful, and fraudulent.

264. TMHA, Osman, Simeon, and Delbene Lapolla & Thomas objectively manifested agreement to the commission of the substantive RICO violations and to the commission of two or more predicate acts through participation in the conduct of the affairs of the enterprise.

265. TMHA, Osman, Simeon, and Delbene Lapolla & Thomas engaged in a pattern of racketeering activity that can be reasonably inferred from their close professional relationship and the dependency of the fraudulent acts of each on the fraudulent acts of the others.

266. At least one overt and wrongful act was done by one or more of the conspirators to achieve the purpose of the conspiracy. Those acts were done pursuant to the common schemes and in furtherance of the objects of the conspiracy and in concert.

267. TMHA was represented by lawyers at Delbene Lapolla & Thomas from at least 2002 to the present.

268. By at least May or June 2015, Delbene Lapolla & Thomas had knowledge that TMHA, Osman, and Simeon were administering the § 8 voucher program through the misuse of Verification of Need Forms and HUD 9886 Forms, the use of false pretenses and schemes to defraud to gain unauthorized access to voucher participants' medical providers and medical

information, and terminating persons' participation in the § 8 voucher program without notifying participants of their rights under federal law and TMHA policy, all in violation of federal law and Due Process rights under the Fourteenth Amendment.

269.    With knowledge of TMHA, Osman, and Simeon's misconduct and criminal activity, Delbene Lapolla & Thomas continued to represent TMHA and counseled TMHA, Osman, and Simeon in choosing to issue Plaintiffs-Intervenors a new three-bedroom voucher as part of an effort to cover up the misconduct and mitigate any potential future damage to TMHA, Osman and Simeon.

270.    Delbene Lapolla & Thomas objectively manifested an agreement to participate and associate with enterprise in a conspiracy of silence by agreeing to keep TMHA, Osman, and Simeon's misconduct, criminal activity, and violations of criminal and state law hidden from Plaintiffs-Intervenors.

271.    Delbene Lapolla & Thomas played an essential role in the pattern of racketeering and fraud in the administration of the § 8 voucher program and facilitated its continued existence by conspiring with Delbene Lapolla & Thomas to provide counsel and guidance on ways for TMHA, Osman, and Simeon  to keep silent and to administer, as well as continue to administer, the voucher program through the misuse of Verification of Need Forms and HUD 9886 Forms, the use of false pretenses and schemes to defraud to gain unauthorized access to voucher participants' medical providers and medical information, and terminating persons' participation in the § 8 voucher program without notifying participants of their rights under federal law and TMHA policy, all in violation of federal law and Due Process rights under the Fourteenth Amendment.

272.     As a result of one or more acts predicate to the conspiracy, and the conduct and participation of TMHA, Osman, Simeon, and Delbene Lapolla & Thomas in the conduct of the enterprise through a pattern of racketeering activity, Plaintiffs-Intervenors have been injured in their business or property. As a direct and proximate result of these violations, Plaintiffs-Intervenors have been injured in that, *inter alia*, they had to spend money and resources and incur bills and expenses responding to, as well as compensating for, Defendants's misconduct, fraud, and deception and the results and consequences thereof.

273.     RICO permits plaintiffs in a civil action to recover treble damages for "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Plaintiffs seek that any damages are duly trebled in accordance with § 1964(c).

274.     By reason of this violation of 18 U.S.C. §1964(d), Plaintiffs-Intervenors are also entitled to recover from Defendants prejudgment interest, post-judgment interest, costs, and attorney's fees.

275.     The Defendants' actions and statements as set forth above were intentional, willful, corrupt, and in callous disregard for the rights of JG, SP, and the minor children AP and MH, and support an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.     Award Plaintiffs-Intervenors  damages in an amount to be determined at trial and duly treble those damages in accordance with 18 U.S.C. § 1964(c);

B.      Award Plaintiffs-Intervenors punitive damages;

C.      Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

D.      Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under 18

U.S.C. § 1964(c); and

E.      Grant such other relief as is just.

**COUNT FOURTEEN**
**Ohio Common Law**
**Intentional Infliction of Emotional Distress**
**(Against Defendants TMHA and Osman and Simeon, in their Official Capacities)**

276.    Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Fourteen of their Intervening Complaint, allege:

277.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 277 all other allegations in this Intervening Complaint.

278.    TMHA, Osman, and Simeon each intended to cause Plaintiffs-Intervenors serious emotional distress.

279.    The conduct of each of these Defendant as alleged, as well as Defendants' conduct may be revealed in discovery, was extreme and outrageous.

280.    The conduct of TMHA, Osman, and Simeon was the proximate cause of Plaintiffs-Intervenors serious emotional distress.

281.    These Defendants' conduct as alleged was intentional, willful, corrupt, and in callous disregard for the rights of JG, SP, and the minor children AP and MH, and support an award of punitive damages.

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

Page 69 of 72

A.   Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

B.   Award Plaintiffs-Intervenors punitive damages;

C.   Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

D.   Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

E.   Grant such other relief as is just.

**COUNT FIFTEEN**
**<u>Ohio Common Law</u>**
**Intentional Infliction of Emotional Distress**
**(Against Defendants Osman and Simeon, Individually)**

282.    Plaintiffs-Intervenors JG, SP, and their minor children AP and MH, for Count Fifteen of their Intervening Complaint, allege:

283.    Plaintiffs-Intervenors re-allege and incorporate by reference as if re-alleged in paragraph 283 all other allegations in this Intervening Complaint.

284.     Osman, and Simeon each intended to cause Plaintiffs-Intervenors serious emotional distress.

285.    The conduct of each of these Defendant as alleged, as well as their conduct  may be revealed in discovery, was extreme and outrageous.

286.    The conduct of Osman, and Simeon was the proximate cause of Plaintiffs-Intervenors serious emotional distress.

287.    The conduct of Osman and Simeon as alleged was intentional, willful, corrupt, and in callous disregard for the rights of JG, SP, and the minor children AP and MH, and support an award of punitive damages.

Page 70 of 72

WHEREFORE, Plaintiffs-Intervenors pray this Court to enter judgment in their favor and for the following relief:

A.    Award Plaintiffs-Intervenors actual and compensatory damages in an amount to be determined at trial;

B.    Award Plaintiffs-Intervenors punitive damages;

C.    Award Plaintiffs-Intervenors prejudgment interest, post- judgment interest;

D.    Award Plaintiffs-Intervenors their fees, costs, and attorney's fees available under the law; and

E.    Grant such other relief as is just.

## JURY DEMAND

288.    Plaintiffs-Intervenors JG, SP, and their minor children, AP and MH, each demand a trial by jury on each and every claim to which they are so entitled.

Respectfully submitted,

JONATHAN F. ANDRES P.C.

  /s/ Jonathan F. Andres
Jonathan F. Andres (Mo. 39531)
1127 Hoot Owl Rd.
St. Louis, MO 63005
Tel. (636) 633-1208
Fax (314) 862-1606
andres@andreslawpc.com

Counsel for Plaintiffs-Intervenors

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing was served this 27th day of March, 2017 to all counsel of record via the Court's electronic filing system.


/s/ Jonathan F. Andres