PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 4:17-CV-101 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| TRUMBULL METROPOLITAN HOUSING ) | |
| AUTHORITY, *et al.*, ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** [Resolving ECF No. 41] |
| Defendants. | |

Pending before the Court is Defendants Trumbull Metropolitan Housing Authority ("TMHA"), Russell Osman, and Valerie Simeon's partial Motion to Dismiss (ECF No. 41) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants seek to dismiss: (1) Counts Six and Seven of Plaintiffs' Intervening Complaint, which allege that their due process rights were violated; (2) Count Ten, which alleges that Defendants discriminated against Plaintiffs on the basis of race with respect to the rental of a dwelling; and (3) Count Eleven, which alleges that Defendants retaliated against Plaintiffs in denying them housing because Plaintiffs filed a Department of Housing and Urban Development ("HUD") discrimination claim against Defendants. *Id*. Plaintiffs oppose the motion. ECF No. 45. Defendants replied. ECF No. 46. For the reasons below, Defendants' Motion to Dismiss is granted.

**I. Background**

The United States brought a single cause of action on behalf of Plaintiffs alleging that Defendants violated 42 U.S.C. § 3604 ("the Fair Housing Act" or "FHA") by engaging in unlawful discrimination on the basis of disability in the rental of housing. ECF No. 1. The Court granted the Motion to Intervene (ECF No. 3) filed by Plaintiffs JG, SP, and their two minor children AP and MH. ECF No. 14. As a result, Plaintiffs filed an Intervening Complaint, alleging fifteen claims against Defendants.[1] ECF No. 16.

Plaintiffs JG, SP, and their two minor children are residents of Trumbull County, Ohio who sought subsidized housing *via* services offered by Defendants. ECF No. 16 at PageID#: 250–51. Plaintiffs have various illnesses that make them eligible for housing accommodations—JG has been diagnosed with end-stage renal disease and Type-1 Diabetes, and one of their children has a learning disability. *Id.* at PageID#: 254.

Defendant TMHA is a public housing authority of the State of Ohio authorized to administer low-income housing programs and to administer federal Section 8 housing programs in Trumbull County. *Id.* at PageID#: 251. Defendant Osman works for TMHA as its Assistant Director of TMHA, and Defendant Simeon is employed as its Voucher Program Coordinator. *Id.*

---

[1] Plaintiffs also joined the law firm Delbene Lapolla & Thomas as Defendant. ECF No. 16. This Defendant has been dismissed. ECF No. 35.

(4:17-CV-101)

### A. 2014

The Intervening Complaint alleges that, in February 2014, Plaintiffs applied for, and were issued, a voucher for a two-bedroom house. ECF No. 16 at PageID#: 252;254. Plaintiffs later requested and were granted a voucher that would permit them to rent a house with up to four bedrooms. *Id*. at PageID#: 255. Using this voucher, Plaintiffs selected a three-bedroom house. *Id*. at PageID#: 256. Defendants conducted an inspection of the three-bedroom house to ensure that it complied with HUD's health and safety requirements. *Id*. Pursuant to Defendant TMHA's written policy, Chapter 10(B), "once the unit has had an initial inspection the family must take this unit unless the landlord fails to correct the items noted on the inspection list." *Id.*

On or about September 29, 2014, Plaintiffs sent Defendants a notification and request letter concerning the suitability of the three-bedroom house for Plaintiff JG's disability-related needs. *Id*. at PageID#: 258. In the letter, Plaintiffs notified Defendants that the three-bedroom house was not suitable for Plaintiff JG, because he required a separate room for his at-home dialysis treatment. *Id*. Additionally, Plaintiffs requested Defendants issue them new paperwork permitting the rental of a four-bedroom home that would be more suitable for Plaintiff JG's disability-related needs. *Id*. Defendants denied Plaintiffs' request on grounds that Plaintiffs had already selected the three-bedroom house, the house had been inspected, and Defendants' policy required Plaintiffs to lease the house because the inspection had been completed and approved. *Id*. at PageID#: 259. Plaintiffs refused to sign the lease for the three-bedroom house. *Id*. at PageID#: 260. As a result, on October 3, 2014, Defendants terminated Plaintiffs' voucher

(4:17-CV-101)

because Plaintiffs "failed to sign [the] document and move into [a] unit that had passed the inspection." *Id*. at PageID#: 261.

On December 21, 2014, Plaintiffs filed a housing discrimination complaint with HUD, claiming that Defendants denied Plaintiffs a reasonable accommodation of a four-bedroom house voucher. *Id*. at PageID#: 263–64.

**B. 2015**

On February 19, 2015, Plaintiffs reapplied to participate in the housing voucher program. ECF No. 16 at PageID #: 263. Defendants approved Plaintiffs' application, placed them on a waiting list; and, soon after, issued Plaintiffs a voucher for a two-bedroom house. *Id*. at PageID#: 264. Plaintiffs requested a voucher increase for a three-bedroom house. *Id*. at PageID#: 272. In determining whether a three-bedroom house was necessary, Defendant Simeon contacted Plaintiff JG's dialysis clinic to inquire whether a separate bedroom was necessary. *Id.* at PageID#: 264–65. Plaintiffs allege that, in order to gain access to information relative to the 2015 application, Defendant Simeon sent several authorization forms—a Verification of Need Form (medical authorization) and a signature page from a HUD-9886 Form (financial authorization) previously signed by Plaintiff JG—to the dialysis clinic. *Id*. Defendants justify their actions by contending that Plaintiff JG had already executed a 2014 Verification of Need Form authorizing his dialysis clinic to provide his medical information to Defendants. ECF No. 41 at PageID#: 489. Furthermore, Defendants recount that they had already engaged in numerous rounds of communication with Plaintiff JG's dialysis clinic regarding Plaintiff JG's disability and housing accommodation needs prior to March 2015. *Id*.

4

(4:17-CV-101)

On April 20, 2015, Plaintiff JG's nephrologist sent Defendants a letter stating that Plaintiff JG is able to perform his home dialysis treatments safely if he "has a clean room in his house for that purpose." ECF No. 41 at PageID#: 489. On June 15, 2015, as a result of these communications, Defendants approved and issued Plaintiffs a "new" voucher for a three-bedroom house. ECF No. 16 at PageID#: 272. On September 1, 2015, Plaintiffs elected to use their voucher to rent a three-bedroom house of their choosing, which Defendants inspected and approved. *Id.* at PageID#: 273.

**C. Now**

Defendants move to dismiss Counts Six, Seven, Ten and Eleven of Plaintiffs' Intervening Complaint. ECF No. 41.

**II. Standard of Review**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

5

(4:17-CV-101)

*Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). A court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

### III. Analysis

Defendants move to dismiss Plaintiffs' claims that their due process rights were violated when Defendants attached Plaintiff JG's signature page to a Verification of Need form; that they were discriminated against on the basis of race; and that Defendants retaliated against Plaintiffs for filing a HUD complaint. Each argument is addressed in turn.

(4:17-CV-101)

### A. Plaintiffs' Due Process Claims (Counts Six and Seven)

Plaintiffs claim that their Fourteenth Amendment due process rights were violated when Defendant Simeon attached Plaintiff JG's signature page from a HUD-9886 Form to a Verification of Need Form. ECF No. 16 at PageID#: 283–87. The Fourteenth Amendment's Due Process Clause protects life, liberty, and property. *Charles v. Baesler*, 910 F.2d 1349, 1352 (6th Cir. 1990) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 n.3 (1985)). Due process may impose either substantive or procedural limitations upon a particular deprivation. *Id.* (citing *Kelley v. Johnson*, 425 U.S. 238, 244 (1976)). To prevail on a procedural due process claim, "the claimant must be able to point to a deprivation of some property or liberty interest." *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) (citing *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995)). "The process requirement necessary to satisfy fourteenth amendment procedural due process comes into play only after plaintiff has shown that it has a property or liberty interest." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995). The Fourteenth Amendment also protects substantive due process, which "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Charles*, 910 F.2d at 1353 (quoting *Michael H. v. Gerald D.*, 491 U.S. 110, 109 (1989)). Substantive due process gives a person "[t]he right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action." *LRL Properties*, 55 F.3d at 1115. The Sixth Circuit has "recognized two types of substantive due process violations: (1) official acts that are unreasonable and arbitrary and 'may not take place no

7

(4:17-CV-101)

matter what procedural protections accompany them,' and (2) official conduct that 'shocks the conscience.'" *Id*.

Plaintiffs do not specify whether they seek redress for violations of their right to substantive or procedural due process. Regardless, Plaintiffs have not demonstrated that either their substantive or procedural due process rights were violated.

As for procedural due process rights, Plaintiffs have not identified a property or liberty deprivation resulting from Defendants actions in 2015, including Defendants' March 2015 communications with Plaintiff JG's dialysis center.[2] Rather, as a result of the March 2015 contact, Defendants: (1) placed Plaintiffs on a waiting list; (2) issued them a voucher; (3) approved Plaintiffs' accommodation request for a voucher increase; and (4) provided Plaintiffs with a rental of their choosing. ECF No. 41 at PageID#: 492. Ultimately, in 2015, Plaintiffs were successful in using their voucher to rent a three-bedroom home in Warren, Ohio. ECF No. 16 at PageID#: 273. Therefore, Plaintiffs have not successfully pleaded a claim for violation of

---

[2] Defendants concede that "Plaintiffs asserted due process claims based on the October 2014 events in Counts [Four] and [Five] of their Intervening Complaint." ECF No. 46 at PageID#: 516.

(4:17-CV-101)

their procedural due process rights in Counts Six and Seven.[3]  See United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31 (6th Cir. 1992) (rejecting the plaintiff's procedural due process claim because it is not enough to show merely that procedures were violated, the plaintiff must also show there was a deprivation of a property interest); Mertik v. Blalock, 983 F.2d 1353 (6th Cir. 1993) (holding that the plaintiff successfully pleaded a procedural due process claim alleging that the defendant's termination of the plaintiff's employment was a due process violation).

Even when the Intervening Complaint is read liberally, it does not demonstrate that Defendants' behavior was unreasonable, arbitrary, or shocks the conscience.  See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 127–28 (1992) (discussing the limited cases in which the Supreme Court has recognized a substantive due process right and holding that state actor's alleged failure to train its employees, or to warn them about known risks of harm, was not "an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense").

---

[3] Despite only making reference to the March 2015 events in Counts Six and Seven (ECF No. 16 at PageID#: 283–87), in their opposition, Plaintiffs assert that their claims are not solely focused on Defendants' actions in March 2015. ECF No. 45 at PageID#: 509. Plaintiffs' attempt to blur the events of 2014 and 2015 fail. See ECF No. 46 at PageID#: 514. The claims regarding the 2014 events are addressed in Counts Four and Five of the Complaint and survive this ruling. See ECF No. 16 at PageID#: 279–283 (alleging Defendants violated their due process rights by depriving them of a hearing on the basis of Defendants' decision to terminate their Section 8 voucher participation in October 2014).

(4:17-CV-101)

Plaintiffs' core grievance is that Defendant Simeon attached Plaintiff JG's previously-signed HUD-9886 signature page to a Verification of Need form.[4] (In other words, Plaintiffs allege the 2014 signature was used for information sought in the 2015 application process.) Without doubt, HUD is authorized to seek relevant information in making housing determinations. *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (citing the Joint Statement issued by HUD and the Department of Justice ("DOJ") interpreting 42 U.S.C. § 3604(f)(3)(b)). Nevertheless, attaching a signature page from another form executed at an earlier time is far from a best practice, but not sufficiently concerning as to bear the weight of a substantive due process claim. Because Plaintiffs have not shown they were denied a liberty or property interest as a result of Defendants' behavior, their due process claims pleaded in Counts Six and Seven fail as a matter of law.

**B. Race Discrimination Claim (Count Ten)**

It is well-established that "the *McDonnell Douglas/Burdine* analysis applies to federal housing-discrimination claims . . . brought under the Fair Housing Act." *Lindsay v.Yates*, 498 F.3d 434, 438 (6th Cir. 2007). A plaintiff who alleges discrimination on the basis of race must make out a *prima facie* case by showing: "(1) that he is a member of a racial minority, (2) that he applied for and was qualified to rent or purchase certain property or housing, (3) that he was

---

[4] The HUD-9886 form authorizes HUD employees to obtain information from various sources in order to determine a person's eligibility for subsidized housing and level of need.

10

(4:17-CV-101)

rejected, and (4) that the housing or rental property remained available thereafter." *Lindsay*, 498 F.3d at 438–39 (quoting *Mencer v. Princeton Square Apts.*, 228 F.3d 631 (6th Cir. 2000)). The Supreme Court has instructed that "the precise requirements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id*. at 439 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). If the plaintiff satisfies the *prima facie* requirements, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for rejecting the plaintiff. *Id.* Finally, the burden shifts back to the plaintiff to show that the defendant's proferred non-discriminatory reason is a pretext. *Id.* Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process. *Id.*

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court unanimously held that a plaintiff who asserted federal employment-discrimination claims was not required to plead facts establishing a *prima facie* case to state a claim for relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). The Court stated that "[t]he *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id*. at 510. Although *Swierkiewicz* was an employment-discrimination case, many circuits, including the Sixth Circuit, have expressly extended its holding to housing-discrimination claims. *Lindsay*, 498 F.3d at 439 (Sixth Circuit recognizing that *Swierkiewicz* applies to housing discrimination) (citing *Meyer v. Bear Rd. Assocs.*, 124 F. App'x 686, 688 (2d Cir. 2005)); *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) ("The *Swierkiewicz* holding applies with equal force to any claim . . . that the

11

(4:17-CV-101)

*McDonnell Douglas* framework covers."); Edwards v. Marin Park, Inc., 356 F.3d 1058, 1061–63 (9th Cir. 2004) (stating that the reasoning of *Swierkiewicz* "applies to any claim to which the *McDonnell Douglas* framework is applicable . . ."). "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the "grounds" of her "entitlement to relief" requires more than labels and conclusions . . ." Twombly, 550 U.S. at 555. In *Bell v. Atlantic v. Twombly*, the U.S. Supreme Court rejected the argument that its holding ran contrary to *Swierkiewicz* and noted "that the [U.S. Supreme Court] does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Against this legal backdrop Defendants seek dismissal of Plaintiffs' claim of race discrimination and failure to make reasonable accommodation because of race alleged in Count Ten. See ECF No. 16 at PageID#: 292. In defense of their claim, Plaintiffs' opposition broadly cites to the entirety of the Procedural History and General Allegations in the Intervening Complaint. A careful reading of the entire Complaint leaves one searching for support for the alleged race-based discrimination and finding only declarations that discrimination occurred "because of [Plaintiffs'] race." ECF No. 45 at PageID#: 511 (directing to ¶¶ 7, 179-82); ECF No. 16 at PageID#: 249, ¶ 7. In *Lindsay v. Yates*, the Sixth Circuit held that an African American couple properly pleaded a housing discrimination claim when they set forth the factual and statutory bases for their claims. Lindsay, 498 F.3d at 440. In that case, the Lindsays alleged that the defendants executed a purchase agreement with the Lindsays, accepted the Lindsays' earnest money, but terminated the contract the day after learning the Lindsays were black. Id.

(4:17-CV-101)

Unlike the Lindsays, Plaintiffs merely provide an unsupported legal conclusion for their Fair Housing Act race discrimination claim: "JG and SP and their minor children are black and Defendants Osman and Simeon are white, and Defendants' housing discrimination and failure to make reasonable accommodations in violation of the FHA was racially motivated in violation of the FHA, 42 U.S.C. § 3604(b)." ECF No. 16 at PageID#: 249, ¶ 7. Plaintiffs do not provide a factual predicate that establishes a nexus between Defendants' actions and Plaintiffs' race. Plaintiffs merely identify each party's race and conclude that Defendants, because of Plaintiffs' race, refused to make reasonable accommodations.[5] ECF No. 16 at PageID#: 249, ¶ 7. Because Plaintiffs here have not nudged their claim of discrimination because of race across the line from conceivable to plausible, Defendants' Motion to Dismiss Count Ten prevails. *See Twombly*, 550 U.S. at 570.

**C. Fair Housing Act Retaliation Claim (Count Eleven)**

The FHA prohibits retaliation against any person who exercises her rights protected by the FHA. 42 U.S.C. § 3617. To adequately plead a retaliation claim, a plaintiff must demonstrate that: (1) she engaged in conduct protected by the Constitution or by statute; (2) defendant took an adverse action against the plaintiff, and (3) this adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X*, 175 F.3d 378, 386 (6th Cir. 1999).

---

[5] Plaintiffs have left unbridged an especially wide gulf, given that they were awarded the rental of their choosing, as further discussed below.

13

(4:17-CV-101)

Under the FHA, adverse action must result in some loss of property. *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002); *see Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (stating that an adverse action must result in a materially adverse change that is more disruptive than a mere inconvenience; a materially adverse change must result in a financial loss, a material loss of benefits, or other type of substantive loss). As indicated above, "[a] housing provider [] is entitled to seek information from an allegedly disabled person in order to establish the existence of the disability and the necessity of the accommodation." *Overlook Mut. Homes, Inc.*, 415 F. App'x at 621. The inquiry need not be highly intrusive." *Id.* In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary. . . ." *Id.* at 621–22.

Plaintiffs allege that Defendants retaliated against them for filing a HUD disability discrimination claim. ECF No. 16 at PageID#: 294–97. There is no dispute that Plaintiffs engaged in protected conduct in filing the HUD claim. Plaintiffs have not demonstrated, however, that Defendants took an adverse action against Plaintiffs after December 21, 2014—the date they filed their HUD complaint. To the contrary, after Plaintiffs filed their HUD claim, Defendants approved Plaintiffs' application to participate in the voucher program, issued Plaintiffs a voucher, approved their disability accommodation request, and ultimately provided Plaintiffs with a rental of their choosing. ECF No. 41 at PageID#: 493. Although Plaintiffs argue that Defendants retaliated against them by communicating with Plaintiff JG's dialysis

14

(4:17-CV-101)

clinic in March 2015, they have not demonstrated that this allegedly adverse action resulted in some loss of property.[6]

For these reasons, Defendants' Motion to Dismiss for Plaintiffs' retaliation claim at Count Eleven is granted.

### IV. Conclusion

For the foregoing reasons, Defendants' partial Motion to Dismiss is granted. Counts Six, Seven, Ten, and Eleven are dismissed. The case shall proceed as to the remaining Counts in the Intervening Complaint.[7]

IT IS SO ORDERED.

| October 30, 2017 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[6] Plaintiffs also allege that Defendants retaliated against Plaintiffs by failing to notify or offer Plaintiffs the opportunity to request an informal hearing prior to Plaintiffs' termination from the voucher program. These events, however, occurred on October 3, 2014, before Plaintiffs filed the HUD complaint on December 21, 2014. ECF No. 16 at PageID#: 294. Therefore, it is factually impossible for these actions to have been retaliatory.

[7] Earlier, the parties agreed to dismiss Counts Twelve and Thirteen of the Intervening Complaint. ECF No. 43.