PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | CASE NO. 4:17CV101 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| TRUMBULL METROPOLITAN HOUSING | ) | |
| AUTHORITY, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 56, 57] |

Pending before the Court is Defendants Trumbull Metropolitan Housing Authority ("TMHA"), Russell Osman, and Valerie Simeon's partial Motion for Summary Judgment.  ECF No. 56.  Defendants move for summary judgment as to: (1) Count Three, which alleges that, Defendant TMHA negligently hires and trains its employees; (2) Counts Four and Five, which allege that, under 42 U.S.C. § 1983, Defendants deprived Plaintiffs of their right to federally subsidized housing by failing to notify them of an opportunity to request an informal hearing; (3) Count Nine, which alleges that, pursuant to the Fair Housing Act, 42 U.S.C. § 3604, Defendants discriminated against Plaintiffs by failing to reasonably accommodate their disabilities; and, (4) Counts Fourteen and Fifteen, intentional infliction of emotional distress claims, of the Intervening Complaint.  *Id.*  Plaintiffs have responded in opposition.  ECF No. 61.  Defendants replied.  ECF No. 63.

(4:17CV101)

For the reasons set forth below, Defendants' partial Motion for Summary Judgment (ECF No. 56) is granted.

## I. Background

The United States brought a single cause of action on behalf of Plaintiffs alleging that Defendants violated 42 U.S.C. § 3604 ("the Fair Housing Act" or "FHA") by engaging in unlawful discrimination on the basis of disability in the rental of housing. ECF No. 1. The Court granted the Motion to Intervene (ECF No. 3) filed by Plaintiffs JG, SP, and their two minor children AP and MH. ECF No. 14. As a result, Plaintiffs filed an Intervening Complaint (ECF No. 16), alleging fifteen claims against Defendants.[1] ECF No. 56 at PageID#: 561. Plaintiffs JG, SP, and their two minor children are residents of Trumbull County, Ohio who sought subsidized housing *via* services offered by Defendants. *Id.* at PageID#: 564. In applying for Defendants' housing voucher program, Plaintiffs indicated that they have various illnesses that make them eligible for housing accommodations—JG has been diagnosed with end-stage renal disease and Type-1 Diabetes, and one of their children has a learning disability. *Id.* at PageID#: 564—65; ECF No. 56-2 at PageID#: 806, 809.

Defendant TMHA is a public housing authority of the State of Ohio authorized to administer low-income housing programs and to administer federal Section 8 housing programs in Trumbull County. ECF No. 56 at PageID#: 564. Defendant Osman works for TMHA as its

---

[1] Plaintiffs also joined the law firm Delbene Lapolla & Thomas as Defendant. ECF No. 16. This Defendant has been dismissed. ECF No. 35.

(4:17CV101)

Assistant Director of TMHA, and Defendant Simeon is employed as its Voucher Program Coordinator.  *Id.*

### A.  2014

In February 2014, Plaintiffs applied for, and were issued, a voucher for a two-bedroom house.  *Id.* at PageID#: 565.  Plaintiffs later requested and were granted a voucher that would permit them to rent a house with up to four bedrooms.  *Id.* at PageID#: 565—66.  Using this voucher, Plaintiffs selected a three-bedroom house.  *Id.* at PageID#: 566.  Defendants conducted an inspection of the three-bedroom house to ensure that it complied with HUD's health and safety requirements.  *Id.* at PageID#: 566—67.  Pursuant to Defendant TMHA's written policy, Chapter 10(B), "[o]nce the unit has had an initial inspection the family must take this unit unless the landlord fails to correct the items noted on the inspection list."  *Id.* at PageID#: 569.

In September 2014, Plaintiffs sent Defendants a notification and request letter concerning the suitability of the three-bedroom house for Plaintiff JG's disability-related needs.  *Id.* at PageID#: 569; ECF No. 56-11 at PageID#: 876.  In the letter, Plaintiffs notified Defendants that the three-bedroom house was not suitable for Plaintiff JG, because he required a separate room for his at-home dialysis treatment.  ECF No. 56-11 at PageID#: 876.  During that same time, Plaintiffs requested Defendants issue them new paperwork permitting the rental of a four-bedroom home that would be more suitable for Plaintiff JG and AP's disability-related needs.  ECF No. 56 at PageID#: 568—69.  Defendants denied Plaintiffs' request on grounds that Plaintiffs had already selected the three-bedroom house, the house had been inspected, and Defendants' policy required Plaintiffs to lease the house because the inspection had been

3

(4:17CV101)

completed and approved. *Id.* Plaintiffs refused to sign the lease for the three-bedroom house. *Id.* at PageID#: 569. As a result, on October 3, 2014, Defendants terminated Plaintiffs' housing voucher. *Id.*; ECF No. 61 at PageID#: 1776.

On December 21, 2014, Plaintiffs filed a housing discrimination complaint with HUD, claiming that Defendants denied Plaintiffs a reasonable accommodation of a four-bedroom house voucher. ECF No. 61 at PageID#: 1777.

**B. 2015**

On February 19, 2015, Plaintiffs reapplied to participate in the housing voucher program. ECF No. 56 at PageID#: 569. Defendants approved Plaintiffs' application, placed them on a waiting list; and, soon after, issued Plaintiffs a voucher for a two-bedroom house. *Id.* at PageID#: 569—70. Plaintiffs requested a voucher increase for a three-bedroom house. *Id.* at PageID#: 570. In determining whether a three-bedroom house was necessary, Defendant Simeon contacted Plaintiff JG's dialysis clinic to inquire whether a separate bedroom was necessary. *Id.* at PageID#: 264–65. Defendant Simeon sent several authorization forms—a Verification of Need Form (medical authorization) and a signature page from a HUD-9886 Form (financial authorization) previously signed by Plaintiff JG—to the dialysis clinic. ECF No. 61 at PageID#: 1778.

On September 1, 2015, Plaintiffs elected to use their voucher to rent a three-bedroom house of their choosing, which Defendants inspected and approved. ECF No. 56 at PageID:# 570.

(4:17CV101)

### C. Now

Defendants motion for summary judgment on Counts Three, Four, Five, Nine, Fourteen, and Fifteen of Plaintiffs' Intervening Complaint (ECF No. 56) is ripe for ruling. *See* ECF No. 61 (Plaintiffs' opposition); ECF No. 63 (Defendants' reply).

### II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

(4:17CV101)

and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*

6

(4:17CV101)

### III.  Analysis

As a preliminary matter, Plaintiffs concede to the dismissal of Counts Four and Five as duplicative of Counts One and Two.[2]  ECF No. 56 at PageID#: 588.   Therefore, the Court addresses only the remaining counts.

### A.  Plaintiffs' Negligent Hiring and Training Claim (Count Three)

Plaintiffs allege that Defendant TMHA failed to properly "train its employees against depriving participants who are terminated from the Section[]8 voucher program" of their rights concerning notice and hearing procedures, and, therefore, under 42 U.S.C. § 1983, "TMHA's failure to train amounts to deliberate indifference to the rights of these persons."  ECF No. 16 at PageID#: 278.

 To prevail under a § 1983 failure-to-train claim, a plaintiff must show: (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the entity's deliberate indifference; and (3) that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury.  *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).  To establish that the defendant was deliberately indifferent, the plaintiff  "must show prior instances of unconstitutional conduct demonstrating that [defendant] has ignored a history of abuse and was

---

[2]  *See* Plaintiffs' Response in which they make clear the following: "Plaintiffs agree that Counts 4 and 5 are duplicative of Counts 1 and 2.  For this reason and because Defendants do not seek summary judgment on Counts 1 and 2 in any respect, Plaintiffs do not challenge Defendants' basis for granting summary judgment on Counts 4 and 5, that is on procedural grounds as duplicative of Counts 1 and 2 which remain in the case and are expected to go to a jury."  ECF No. 61 at PageID#: 1765.

(4:17CV101)

clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).  In the alternative, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."  *Plinton*, 540 F.3d at 464 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

 In the present case, Plaintiffs fail to produce sufficient evidence that Defendant engaged in a pattern of constitutional violations.  Rather, the evidence indicates that, with respect to hearing procedures, Defendant TMHA maintains a notice and hearing procedure available to Section 8 voucher participants whose assistance may be terminated.  ECF No. 56 at PageID#: 587.  As such, Defendant TMHA trains its employees, in accordance with the notice and hearing requirements set forth in 24 C.F.R. § 982.555, which are "modeled after federal HUD regulations and updated annually."  *Id.*; ECF No. 56-1 at PageID#: 591, 775—79.  Under 24 C.F.R. § 982.555, Section 8 Voucher Program participants are informed of and given the opportunity to present their case—conduct discovery, present evidence, and call witnesses—at these hearings.  ECF No. 56 at PageID#: 587.

 Plaintiffs also lack evidence to support an "obvious potential" for constitutional violations.  Despite Plaintiffs' assertion of their isolated claims, Plaintiffs fail to point to any instances in which Defendant TMHA was previously informed of an "obvious" need for more or different training with respect to its hearing procedures.  "Deliberate indifference is a 'stringent standard of fault,' *Brown*, 520 U.S. at 410, 117 S.Ct. 1382, for which 'even heightened

8

(4:17CV101)

negligence will not suffice.'" *Plinton*, 540 F.3d at 465. Lacking a showing of the "obvious" need for more or different training other than what Defendant TMHA already provides to its employees, Plaintiffs' arguments fail.

Because no reasonable jury could find that Defendant TMHA was deliberately indifferent in hiring and training its employees against depriving Section 8 voucher program participants of their right to a hearing, the Court grants summary judgment in favor of Defendants with respect to Count Three.

**B. Fair Housing Act Discrimination Claim (Count Nine)**

The FHA prohibits discrimination in the sale or rental of housing based on race, color, religion, sex, familial status, national origin, or handicap. 42 U.S.C. § 3604(f). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 620—21 (6th Cir. 2011) (citing 42 U.S.C. § 3604(f)(3)(B)).

To establish a claim for failure to reasonably accommodate a handicap, a plaintiff must prove that: (1) he or his associate suffers from a disability within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford "an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) the defendant refused to make the requested accommodation. *Id.* at 621 (quoting *DuBois v. Ass'n of Apartment Owners of 2987 Kalakua*, 453 F.3d 1175, 1179 (9th Cir. 2006)). "The burden is on the plaintiff to establish each

9

(4:17CV101)

element."  *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. July 29, 2014).  Nevertheless, reasonable-accommodation cases usually turn on the "operative elements" of § 3604(f)(3)(B): "whether the proposed accommodation is reasonable and whether it is necessary to afford disabled persons an equal opportunity for enjoyment."  *Id*. at 540.

Plaintiffs assert that because: (1) Plaintiff JG needed a separate room to conduct his dialysis treatment, and (2) Plaintiff AP needed her own bedroom to accommodate her disability, Defendants discriminated against them in failing to accommodate their request to rent the four-bedroom house.  ECF No. 61 at PageID#: 1771.

### 1.  **Plaintiff JG**

Defendants do not dispute that Plaintiff JG suffers from a disability within the meaning of the FHA.  Defendants, however, argue that the requested accommodation—a separate bedroom for JG's dialysis treatment—is not necessary.  ECF No. 56 at PageID#: 572.

To prove that the requested accommodation is necessary, Plaintiffs "must show that, but for the accommodation," Plaintiff JG "likely will be denied an equal opportunity to enjoy the housing of [his] choice."  *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002).

Plaintiffs argue that a four-bedroom house was required because Plaintiff JG needed a completely separate room to administer his at-home dialysis treatment.  ECF No. 61 at PageID#: 1771—72.  Plaintiffs have not, however, offered any admissible evidence showing that it was necessary for Plaintiff JG to have a separate room for the sole purpose of administering his dialysis treatment.  To the contrary, the evidence reveals that, Plaintiff JG need only conduct his dialysis treatment in a "clean" room.  ECF Nos. 56 at PageID:# 573—74; 56-10 (medical expert

10

(4:17CV101)

testimony explaining that while it is a medical standard requirement for patients conducting at-home dialysis treatment to have a clean room, the room "does not have to be only for that purpose"); 56-12 (medical expert testimony confirming that a completely separate room is not necessary to perform at-home dialysis and that it is common for patients to safely perform at-home dialysis in their own bedroom).  Moreover, Plaintiffs' September 30, 2014 letter is insufficient to show that the three-bedroom house was unfit for Plaintiff JG's dialysis treatment because the letter only considers the issue of whether the "basement," rather than the house as a whole, was unfit for Plaintiff to conduct his treatment.  *See* ECF No. 56-11.

Therefore, with respect to Plaintiff JG, Plaintiffs have failed to offer evidence in support of an essential element of their reasonable accommodation claim.

### 2.  Plaintiff AP

Next, Plaintiffs allege discrimination based on Defendants' refusal to accommodate their request to move into the four-bedroom house because Plaintiff AP, who suffers from learning disabilities and wets the bed due to a kidney problem, needed her own bedroom.  ECF No. 61 at PageID#: 1771—72.

Plaintiffs' arguments are unavailing.  It is undisputed that when Plaintiffs initially applied for a housing voucher in 2014, Plaintiffs did not submit a Verification of Need Form based on Plaintiff AP's disabilities.  *See id.* at PageID#: 1766.  Moreover, contrary to Plaintiffs' arguments that Plaintiff AP needed a separate bedroom as a disability accommodation, one of Plaintiff AP's treating physicians, Dr. Giorgio Vescera, testified that, during the time Plaintiff AP was under his

11

(4:17CV101)

care, she was "healthy" and that he did not evaluate her for a disability. ECF Nos. 56 at PageID#: 576; 56-13 at PageID#: 905—06. In accordance with the above statements, Dr. Vescera further testified that, at the time he signed the Verification of Need form, it was not his intent to communicate to TMHA that Plaintiff AP suffered from a disability because he did not believe she had a disability at the time. ECF Nos. 56 at PageID#: 577; 56-13 at PageID#: 907. Furthermore, Plaintiff AP's school psychologists, Drs. Katherine Schroder and Marissa Davies, testified that, they did not evaluate Plaintiff AP for a learning disability at the time the 2014 Verification of Need form was submitted to Defendant TMHA, nor did they assess Plaintiff's learning disability in correlation to her housing needs. ECF No. 56 at PageID#: 578—79. Lastly, with respect to Plaintiff AP's enuresis, Dr. Vescera testified that Plaintiff AP "was wetting the bed as a result of a yeast infection that resolved in about a week." ECF Nos. 56 at PageID#: 576; 56-13 at PageID#: 904—05.

Therefore, although Plaintiffs posit that, Plaintiff AP's disabilities required that she have a separate bedroom, Plaintiffs fail to produce sufficient evidence showing that, at the time of their request in 2014, Plaintiffs provided Defendants with sufficient documentation to establish that Plaintiff AP suffered from a disability that would warrant her having her own bedroom.

Even assuming *arguendo*, that Plaintiffs provided evidence to substantiate or verify that Plaintiff AP suffered from a learning disability in 2014, Plaintiffs' claim, nonetheless fails, because they have not provided sufficient evidentiary or medical evidence to show that a separate bedroom is necessary to accommodate such a disability. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment is appropriate "against a

(4:17CV101)

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Rather, the evidence supports a finding that "a separate bedroom is not a recognized accommodation for individuals with learning disabilities." ECF Nos. 56 at PageID#: 577; 56-14 (medical expert report explaining that a separate bedroom is not a recognized accommodation required for a child with a learning disability).

Accordingly, with respect to Plaintiff AP, Plaintiffs have not made a showing sufficient to establish the existence of a failure to reasonably accommodate a disability claim under 42 U.S.C. § 3604(f).

For these reasons, the Court concludes that Defendants are entitled to summary judgment on Count Nine because Plaintiffs have failed to show that Defendants violated their rights under the FHA.

### C. Intentional Infliction of Emotional Distress Claims (Counts Fourteen & Fifteen)

In Counts Fourteen and Fifteen of their Complaint, Plaintiffs allege intentional infliction of emotional distress ("IIED") claims against Defendants, in their official and individual capacities. ECF No. 16 at PageID#: 315—16.

To prevail on an IIED claim, a plaintiff must prove: "(1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff

13

(4:17CV101)

suffered serious mental anguish of a nature no reasonable person could be expected to endure."

*Lombardo v. Mahoney*, No. 92608, 2009 WL 3649997, at *1 (Ohio App. Nov. 5, 2009).  Under

Ohio law, the alleged extreme and outrageous conduct must be sufficiently egregious:

> Liability has been found only where the conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious, and utterly intolerable in a civilized
> community.  Generally, the case is one in which the recitation of the facts to an
> average member of the community would arouse his resentment against the actor,
> and lead him to exclaim, 'Outrageous!'

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983), *abrogated on other grounds by*

*Welling v. Weinfeld*, 866 N.E.2d 1051, 1054—55 (Ohio 2007).

Defendants urge that summary judgment is proper as to Plaintiffs' IIED claims because:

"(1) there is no evidence of 'extreme and outrageous' conduct; and (2) there is no evidence that

Defendants' actions caused serious [psychic] injury to Plaintiffs."  ECF No. 56 at PageID#: 580.

The Court agrees.

Regarding prong two, Plaintiffs' description of Defendants' conduct does not rise to the

level of extreme and outrageous conduct sufficient to support an IIED claim.  It is undisputed

that, in 2014, Defendants approved Plaintiffs' initial application for a two-bedroom house.  ECF

No. 56 at PageID#: 565.  It is also undisputed that when Plaintiffs later requested a voucher to

rent a house with up to four bedrooms, Defendants granted Plaintiffs' request, and essentially

provided Plaintiffs with a housing of their choosing—the three-bedroom house.  ECF Nos. 56 at

PageID#: 565—66; 61 at PageID#: 1767.  Then, Defendants, in accordance with their policy,

conducted an inspection of the three-bedroom house to ensure that it complied with HUD's

14

(4:17CV101)

health and safety requirements.  ECF No. 56 at PageID#: 566—67.  Pursuant to Defendant

TMHA's written policy, Chapter 10(B), "once the unit has had an initial inspection the family

must take this unit unless the landlord fails to correct the items noted on the inspection list." *Id.*

at PageID#: 569.

Based on these undisputed facts, it is evident that Defendants denied Plaintiffs' third

request—the request to move into a four-bedroom house that resulted in the termination of

Plaintiffs' voucher—in accordance with their policy that required Plaintiffs to lease the house

once the inspection had been completed and approved and only after: (1) having previously

accommodated Plaintiffs' prior requests; (2) Plaintiffs' selection of the three-bedroom house; and

(3) the completion of Defendants' mandatory inspection of the three-bedroom house.  *See id.*

The Court finds that such actions do not constitute extreme and outrageous conduct that goes

"beyond all possible bounds of decency."  *Yeager*, 453 N.E.2d at 671.

Furthermore, Defendants' 2015 communications with Plaintiff JG's dialysis center do not

rise to the level of extreme and outrageous conduct.  Instead, Defendants' 2015 communications

demonstrate that Defendants: (1) placed Plaintiffs on a waiting list; (2) issued them a voucher;

(3) approved Plaintiffs' accommodation request for a voucher increase; and (4) provided

Plaintiffs with a rental of their choosing—a three-bedroom house.  *See* ECF No. 56 at PageID#:

570.

Accordingly, Plaintiffs have not set forth sufficient evidence that there is a genuine

dispute of material fact as to whether Defendants' conduct was extreme and outrageous.

(4:17CV101)

With respect to prong three of an IIED claim, the Ohio Supreme Court has indicated that the emotional injury that a plaintiff must show needs to be "both severe and debilitating." *Lang v. D&G Homes*, 494 F.Supp.2d 799, 810 (S.D. Ohio 2007) (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (Ohio 1983)). A "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Buckman-Peirson v. Brannon*, 159 Ohio App. 3d 12, 19, 822 N.E.2d 830, 835 (Ohio Ct. App. 2004).

An Ohio appellate court explained that: "[s]erious emotional distress describes emotional injury which is both severe and debilitating." *See Buckman-Peirson*, 159 Ohio App.3d at 19, 822 N.E.2d at 835 (noting that under *Paugh*, the plaintiff explicitly stated that as a result of the defendant's alleged conduct she suffered from high blood pressure). "A plaintiff claiming severe and debilitating emotional distress must present some 'guarantee of genuineness' in support of her claim to prevent summary judgment in favor of the defendant. The Ohio Supreme Court has held, '[i]n most instances, expert medical testimony will help establish the validity of the claim of serious emotional distress.'" *Id.* at 837.

In the instant case, Plaintiffs' IIED claims fail because Plaintiffs have not presented sufficient evidence that Defendants caused them serious emotional distress. As an initial matter, Plaintiffs fail to identify an emotional injury caused by Defendants' conduct as required under Ohio law. Although Plaintiff SP testified at her deposition that, Defendants' actions caused her

16

(4:17CV101)

to suffer from "severe anxiety and depression, paranoia," Plaintiff also admitted that she was already in therapy before any matters concerning Defendants' voucher arose.  ECF No. 56-2 at PageID#: 816—817.  Furthermore, Plaintiff testified that, she was not aware of any medical professional telling her that the anxiety and depression she experienced was caused by "this issue with the defendants in this case." *Id.* at PageID#: 821.  The evidence also reveals that Plaintiff's psychologist, Dr. Brenda Klekot, stated that she did not evaluate Plaintiff "to determine whether or not her housing situation with the defendants in this case [] resulted in any new types of disorders or conditions."  ECF Nos. 56 at PageID#: 583—84; 56-17 at PageID#: 947.  Moreover, Dr. Klekot also testified that, she did not evaluate Plaintiff SP "to determine whether or not her housing situation with the defendants in this case [] aggravated any pre-existing disorders or conditions."  ECF Nos. 56 at PageID#: 584; 56-17 at PageID#: 947.  Because Plaintiff SP fails to provide sufficient evidence—either in the form of medical or corroborating testimony— that Defendants' actions caused her serious emotional injury, the Court finds that Plaintiffs have not satisfied the third prong of their IIED claims.

Overall, Plaintiffs fail to provide sufficient evidence to satisfy the exacting standard required of an IIED claim under Ohio law.  Therefore, the Court finds that summary judgment is proper as to Counts Fourteen and Fifteen.

17

(4:17CV101)

## IV.  Conclusion

For the foregoing reasons, Defendants' partial Motion for Summary Judgment (ECF No. 56) is granted.


IT IS SO ORDERED.


  May 10, 2018                                                 */s/ Benita Y. Pearson*
Date                                                       Benita Y. Pearson
                                                     United States District Judge